**AMCAST INDUSTRIAL CORPORATION, et al., Plaintiffs,**

**v.**

**DETREX CORPORATION, et al., Defendants.**

**No. S88–620 (RLM).**

United States District Court, N.D. Indiana, South Bend Division.

Nov. 18, 1991.

D. Jeffrey Ireland, Armistead W. Gilliam, Jr., Ann Wightman, Dayton, Ohio, John J. Lorber, Robert J. Palmer, South Bend, Ind., for plaintiffs.

Arthur G. Surguine, Jr., James J. Shea, Fort Wayne, Ind., for defendants.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This is a CERCLA case in which the plaintiff seeks to recover response costs against a supplier of a hazardous substance, whose drivers are claimed to have spilled the substance during deliveries. The cause comes before the court on the motion by defendant Detrex Corporation's for summary judgment, the plaintiffs' motion for partial summary judgment, and Detrex's first and second motions to strike portions of the documentary evidence submitted in support of the plaintiffs' partial summary judgment motion. The parties' briefing, which consisted as much of disparagement of the others' arguments as positive arguments of their own, began on August 19 and appears to have come to a close on November 8.

The court acknowledges the plaintiffs' request for oral argument on their motion for partial summary judgment and on the first motion to strike. However, the parties' thorough memoranda sufficiently aid the court that oral argument will not be necessary, particularly in recognition of the proximity of the December 2 trial date.

## I. FACTS

Plaintiff Elkhart Products Corporation ("EPC") operates a manufacturing plant in Elkhart, Indiana. EPC is a wholly owned subsidiary of plaintiff Amcast Industrial Corporation ("Amcast"). Detrex manufactures chemicals for industrial uses, including a solvent known as trichloroethylene ("TCE"), a hazardous substance as defined in 42 U.S.C. § 9601(14). TCE is a mutagen and a suspected carcinogen, and human exposure to this substance may cause eye and skin irritation, headaches, heart disease, and liver damage.

Detrex marketed its chemicals to Indiana customers through its Gold Shield Solvents Division in Indianapolis. Detrex sold TCE to EPC between 1978 and 1986, making approximately thirty-four deliveries to the Elkhart site. Detrex was EPC's sole supplier of TCE during those years. Detrex employed five drivers to deliver the sol-

vent. However, for fifteen of the thirty-four deliveries, Detrex used the services of an independent common carrier, Transport Services Company ("Transport").

The plaintiffs contend that TCE was spilled when it was delivered by Detrex or Transport drivers, contaminating the soil and groundwater. The plaintiffs assert that the drivers spilled two to five gallons of TCE with each delivery, and twice spilled greater quantities. One occasion involved an overfilling of EPC's tank, resulting in a 200 to 300 gallon spill that destroyed the asphalt pavement surrounding the tank. The other incident involved the driver's failure to close the valve of his truck, causing a two inch stream of TCE to be discharged from the truck as it left the EPC site.

EPC learned of the TCE groundwater contamination in the 1980s, following an investigation of a complaint that TCE was travelling from the groundwater beneath EPC's plant and polluting the groundwater beneath Miles Laboratories, a pharmaceutical manufacturer located across the street.

The plaintiffs further allege that they expended more than $1 million to monitor the release of TCE into the environment, take short term action to eliminate risks, and design and install a permanent remedy. EPC claimed that its remedial action will cost nearly $1.5 million and that it sustained $1 million in property damage.

In a letter dated August 27, 1986, EPC's president demanded that Detrex reimburse EPC for the cost of the remedial measures. Detrex did not reimburse EPC. Amcast and EPC brought this action pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), as amended, 42 U.S.C. §§ 9601 et seq., and the Declaratory Judgment Act, 28 U.S.C. § 2201. The plaintiffs also sought common law tort and contractual remedies.

## II. SUMMARY JUDGMENT STANDARD

A party seeking summary judgment must demonstrate that no genuine issue of fact exists for trial and that the movant is

entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Certain Underwriters of Lloyd's v. General Accident Ins. Co. of America,* 909 F.2d 228, 231 (7th Cir.1990). If that showing is made and the motion's opponent would bear the burden at trial on the matter that forms the basis of the motion, the opponent must come forth with evidence to show what facts are in actual dispute. *Lujan v. National Wildlife Federation,* — U.S. —, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Sims v. Mulcahy,* 902 F.2d 524, 540 (7th Cir.), *cert. denied* — U.S. —, 111 S.Ct. 249, 112 L.Ed.2d 207 (1990). If he fails to do so, summary judgment is proper. *Fitzpatrick v. Catholic Bishop of Chicago,* 916 F.2d 1254, 1256 (7th Cir.1990); *Tatalovich v. City of Superior,* 904 F.2d 1135, 1142 (7th Cir.1990). A genuine factual issue exists only when there is sufficient evidence for a jury to return a verdict for the motion's opponent. *Harbor House Condominium Ass'n v. Massachusetts Bay Ins. Co.,* 915 F.2d 316, 320 (7th Cir.1990); *Hines v. British Steel Corp.,* 907 F.2d 726, 728 (7th Cir.1990). Summary judgment should be granted if no reasonable jury could return a verdict for the motion's opponent. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Visser v. Packer Engineering Associates, Inc.,* 924 F.2d 655, 660 (7th Cir.1991).

The parties cannot rest on mere allegations in the pleadings, *Hughes v. Joliet Correctional Center,* 931 F.2d 425, 428 (7th Cir.1991); *McCarthy v. Kemper Life Ins. Companies,* 924 F.2d 683, 687 (7th Cir.1991), or upon conclusory allegations in affidavits. *Mestayer v. Wisconsin Physicians Service Ins. Corp.,* 905 F.2d 1077, 1079 (7th Cir.1990). The court must construe the facts as favorably to the non-moving party as the record will permit, *Brennan v. Daley,* 929 F.2d 346, 348 (7th Cir.1991); *Soldal v. County of Cook,* 923 F.2d 1241, 1245 (7th Cir.1991), and draw any permissible inferences from the materials before it in favor of the non-moving party, *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Illinois Bell Telephone Co. v. Haines and Co., Inc.,* 905 F.2d 1081, 1087 (7th Cir.1990), as long as the inferences are reasonable. *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991). The non-moving party must show that the disputed fact is material, or outcome-determinative, under applicable law. *Johnson v. Pelker,* 891 F.2d 136, 138 (7th Cir.1989).

The court will address the parties' motions for summary judgment with these standards in mind.

## III. THE MOTIONS TO STRIKE

The plaintiffs and Detrex each seek summary judgment on count I, which alleges that Detrex and its drivers are strictly liable for the plaintiff's response costs under 42 U.S.C. § 9607(a)(1) because Detrex is the owner or operator of a facility from which there was a release of hazardous substances. Detrex also moves for summary judgment in its favor as to Counts II, IV, V, VI, VII, VIII, IX, and XIII and the request for punitive damages in the complaint. Count II alleges that Detrex is strictly liable under 42 U.S.C. § 9607(a)(3) for response costs because Detrex arranged for the disposal of a hazardous substance which caused contamination at the site.

Count IV of the complaint alleges that an implied term existed in the contract between Detrex and the plaintiffs that required Detrex to deliver TCE without spillage and without causing environmental damage; the plaintiffs claim that Detrex breached this implied term. Count V asserts that Detrex committed a trespass when it spilled TCE at the site. Count VI alleges negligence by the drivers who delivered TCE, and Count VII alleges that Detrex negligently hired and trained its delivery drivers. Count VIII asserts Detrex is strictly liable for damages because its delivery of TCE constituted an "abnormally dangerous activity." [1] Count IX asserted a

---

1. The plaintiffs claimed in Count VIII that De-

trex was engaged in an "ultrahazardous activi-

nuisance claim and Count XIII asserted an indemnity claim, but the plaintiffs have withdrawn those counts of the complaint.

### A. Evidence of the Spills

The proposition that Detrex caused TCE to be spilled is common to each of the counts. If there were no spills, Detrex engaged in no "release" (Count I), engaged in no "disposal" (Count II), breached no implied "anti-spillage" provision in the contract (Count IV), did not exceed the scope of its invitation so as to commit a trespass (Count V), and engaged in no abnormally dangerous activity (Count VIII). If there were no spills, the plaintiff suffered no damages due to the negligence of Detrex's drivers (Count VI) or Detrex's negligence in training or retaining those drivers (Count VII). Detrex argues that the plaintiffs have no admissible evidence to prove any TCE spillage by Detrex, and has moved to strike several portions of depositions that the plaintiffs seek to use as proof.

Detrex argues that the court must exclude, on hearsay grounds, *see* Fed.R.Ev. 802, the portions of the testimony of Clifton Cartwright, Henry Copenhaver, Gary Emerson, John Graber, Ed Hosea, Richard Mann, Robert Patterson, Dennis Selner, David Smith, and Robert Todd in which the deponents relate that they heard about TCE spills from others. Detrex cites *Visser v. Packer Engineering Associates, Inc.*, 924 F.2d 655, 659 (7th Cir.1991), in which the Seventh Circuit noted that affidavits offered in opposition to a summary judgment motion were not based on personal knowledge. The court stated that Fed. R.Civ.P. 56(e) incorporates Fed.R.Ev. 602, and that evidence offered on summary judgment must be based on the affiant's or deponent's observation or other first-hand experience. 924 F.2d at 659. *See also Price v. Rochford,* 947 F.2d 829, 833 (7th Cir.1991) ("The court believed the articles to be inadmissible.... If so, they fail to meet the requirements of Rule 56(e)").

The plaintiffs respond that the court should give some leeway as to evidence submitted at the summary judgment stage because of the preliminary nature of the proceeding, citing *McFeely v. United States,* 700 F.Supp. 414, 418, n. 1 (S.D.Ind. 1988); and *Reed v. Ford Motor Co.,* 679 F.Supp. 873 (S.D.Ind.1988). Although each of those cases contain the broad language on which the plaintiffs rely, 700 F.Supp. at 418 n. 1 ("Some leeway is given at summary judgment because of the preliminary nature of the proceedings"); 679 F.Supp. at 875 ("the court will not exclude evidence at this stage on grounds of hearsay, irrelevance, or undue prejudice"), the cases' holdings do not support an overly broad reading of Fed.R.Civ.P. 56(e).

The *McFeely* court, which appears to have raised the issue *sua sponte,* considered deposition testimony under Fed. R.Ev. 804(b)(1) despite the absence of a showing of the deponent's unavailability, but described its decision as "generous", and noted that, "Hearsay evidence that does not qualify under any of the hearsay exceptions may not be considered by the courts in ruling on a motion for summary judgment." 700 F.Supp. at 417–18. The *Reed* court considered unauthenticated documents attached to an attorney's affidavit, with the understanding that the documents would be the subjects of trial stipulations. These cases deal with unique circumstances. Together, they support the proposition that doubts as to admissibility should be resolved in favor of admissibility at the summary judgment stage, but they do not support a proposition that a summary judgment court may entirely disregard evidentiary rules governing admissibility at trial.

Accordingly, the court turns to the deposition portions that Detrex challenges. By way of introduction, the plaintiffs contend that the spills fall into three categories:

—*the delivery spills:* small quantities of a gallon or more routinely spilled during all or most deliveries of TCE;

---

ty". However, the parties now agree that the modern term is "abnormally dangerous activity".

ty".

—*the overfill spill:* an incident in which a storage tank was overfilled, causing 200 to 300 gallons of TCE to spill and destroy asphalt; and

—*the open-valve spill:* an incident in which a truck left the storage tank with the truck's valve open, spilling twenty-five to fifty gallons of TCE.

### 1. Clifton Cartwright

Mr. Cartwright is EPC's plant engineer. In his deposition, he testified that Gary Emerson and Bob Todd told him of each of the spillage incidents, although Bob Todd had learned of the overflow spill from another person. Mr. Cartwright investigated the spills, talking to everybody he could think of. Detrex argues that since Mr. Cartwright knows no more than what he was told, his deposition testimony is inadmissible. Fed.R.Ev. 602, 802.

The plaintiffs respond with several arguments. First, they argue that the Cartwright testimony is not hearsay because it is not offered to prove the truth of the matter asserted. Mr. Cartwright's testimony as to the purpose of his investigation following a spill that damaged the asphalt, the plaintiffs contend, is offered to prove that the plaintiffs conducted an investigation pursuant to 40 C.F.R. § 300.-71(a)(2)(ii)(A) (1988), an essential element of the plaintiffs' claim in Count I. They also seem to argue that Mr. Cartwright's testimony is admissible under Fed.R.Ev. 803(24). They argue that his testimony is material and probative, and that its trustworthiness is not seriously contested.

■ The court agrees that Mr. Cartwright's testimony, if limited to showing the conduct of the investigation, is not hearsay. See Fed.R.Ev. 801(c); *United States v. Blandina,* 895 F.2d 293, 300–301 (7th Cir.1989). If so limited, his deposition testimony is not proof of any spill. Spills

may be proven only if the residual exception established by Rule 803(24) applies.[2]

■ Admissibility under the residual exception established by Rule 803(24) requires that "the statement must be sufficiently trustworthy, material, probative, in the interests of justice, and given to opposing parties with the proper notice." *F.T.C. v. Amy Travel Service, Inc.,* 875 F.2d 564, 576 (7th Cir.), *cert denied,* 493 U.S. 954, 110 S.Ct. 366, 107 L.Ed.2d 352 (1989). At this point, the court affords the plaintiffs the leeway discussed in *McFeely* and *Reed:* the record contains no suggestion that Detrex was given notice that the plaintiffs intended reliance on Rule 803(24), *see United States v. Wilkus,* 875 F.2d 649, 655 (7th Cir.) *cert. denied,* 493 U.S. 865, 110 S.Ct. 184, 107 L.Ed.2d 139 (1989), but at the summary judgment stage, the court will consider the statements' admissibility under the remaining tests.

■ District courts have considerable discretion in applying the residual exception. *United States v. Mokol,* 939 F.2d 436, 438 (7th Cir.1991); *United States v. Doerr,* 886 F.2d 944, 954 (7th Cir.1989); *United States v. York,* 852 F.2d 221, 224 (7th Cir.1988); *United States v. Howard,* 774 F.2d 838, 845 (7th Cir.1985). The residual exception is "intended to be used rarely, and only in exceptional circumstances." *United States v. Moore,* 791 F.2d 566, 573 (7th Cir.1986); *Huff v. White Motor Corp.,* 609 F.2d 286, 291 (7th Cir.1979).

Among the factors considered in determining whether to apply the residual exception are the declarant's disinterest, *United States v. Jackson,* 780 F.2d 1305, 1316 (7th Cir.1986); *United States v. Howard,* 774 F.2d at 845, the declarant's motivation to lie, *United States v. York,* 852 F.2d at 225, whether the statement was made under oath, *United States v. Hooks,* 848 F.2d 785, 797 (7th Cir.1988); *United States v. Gui-*

---

**2.** Fed.R.Ev. 803(24) provides:

A statement not specifically covered by any of the [other] exceptions [to the hearsay rule] but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement

is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

nan, 836 F.2d 350, 355 (7th Cir.), *cert. denied,* 487 U.S. 1218, 108 S.Ct. 2871, 101 L.Ed.2d 907 (1988); *United States v. Boulahanis,* 677 F.2d 586, 588 (7th Cir.), *cert. denied* 459 U.S. 1016, 103 S.Ct. 375, 74 L.Ed.2d 509 (1982), the declarant's probable motivation in making the statement, *United States v. Marshall,* 856 F.2d 896, 901–902 (7th Cir.1988); *United States v. Guinan,* 836 F.2d at 355; *Cook v. Hoppin,* 783 F.2d 684, 691 (7th Cir.1986), the extent of the declarant's personal knowledge of the events recounted in the statement, *United States v. Doerr,* 886 F.2d at 956; *F.T.C. v. Amy Travel Service, Inc.,* 875 F.2d at 576; .*United States v. Snyder,* 872 F.2d 1351, 1356 (7th Cir.1989), the probable accuracy of the witness's recounting of the declarant's statement, *United States v. Hooks,* 848 F.2d at 797, a testifying witness's knowledge of the statement's contents, *United States v. Peters,* 791 F.2d 1270, 1293 (7th Cir.), *cert. denied sub nom, Odoner v. United States,* 479 U.S. 847, 107 S.Ct. 168, 93 L.Ed.2d 106 (1986), the declarant's age, *United States v. York,* 852 F.2d at 225, the declarant's character for truthfulness and honesty, *United States v. Snyder,* 872 F.2d at 1355, the frequency with which the declarant made similar statements, *United States v. Vretta,* 790 F.2d 651, 659 (7th Cir.), *cert. denied,* 479 U.S. 851, 107 S.Ct. 179, 93 L.Ed.2d 115 (1986); *United States v. Howard,* 774 F.2d at 846, whether the declarant recanted the statement, *United States v. Moore,* 936 F.2d 1508, 1517 (7th Cir.1991), the statement's temporal proximity to the event related, *United States v. Vretta,* 790 F.2d at 659, and the existence of sufficient corroborative evidence, *United States v. York,* 852 F.2d at 225; *accord, United States v. Mokol,* 939 F.2d at 440 ("where the testimony is critical to the case, the trial court may require a high degree of corroboration").

■ The court also must consider whether more probative, admissible evidence exists, *United States v. Powell,* 894 F.2d 895, 901 n. 5 (7th Cir.) *cert. denied,* —— U.S. ——, 110 S.Ct. 2189, 109 L.Ed.2d 517 (1990); *United States v. Wilkus,* 875 F.2d 649, 655 (7th Cir.) *cert. denied,* 493 U.S. 865, 110 S.Ct. 184, 107 L.Ed.2d 139 (1989);

*United States v. Vretta,* 790 F.2d at 658–659; *Huff v. White Motor Corp.,* 609 F.2d at 295, although sheer need alone does not justify admission. *United States v. Snyder,* 872 F.2d at 1355.

■ The court cannot find that Mr. Cartwright's testimony is admissible under Rule 803(24) to prove the truth of what he was told about the spills. The cases discussed above indicate that with very rare exceptions, the declarants' identities and the basis of the declarants' knowledge must be known. Without such knowledge, the court cannot evaluate the declarants' disinterest, motivation, personal knowledge, general truthfulness, or consistent repetition. For example, in *Cook v. Hoppin,* 783 F.2d at 691, the court found error in admission of statements under Rule 803(24) when the declarants' identities were unknown, and the declarants themselves may have based their statements on hearsay. Under such circumstances, the court held, an analysis cannot even begin as to whether the statements have the requisite circumstantial guarantees of trustworthiness.

Mr. Cartwright was asked the names of the persons with whom he spoke, and he provided six names. He was unable, however, to recall what he was told by each of them. Accordingly, the analysis required by Rule 803(24) cannot be satisfied.

Mr. Cartwright's deposition testimony may be considered, but only insofar as it is offered to establish that the plaintiffs engaged in an investigation of the spills. It is inadmissible, and so may not be considered on summary judgment, to establish that spills occurred.

### 2. Gary Emerson

■ Mr. Emerson testified to having seen TCE end up on the ground when trucks filled the tanks on ten to fifteen occasions from the "late seventies up through early eighties", although he could not provide exact dates. The earliest such occasion was about 1978. Detrex moves to strike Mr. Emerson's testimony as irrelevant because he did not identify the delivery company, so the spills cannot be attrib-

uted to Detrex. Detrex argues that this uncertainty causes the potential for unfair prejudice to substantially outweigh the testimony's probative value. The court disagrees.

The record indicates that Detrex was the plaintiffs' sole supplier of TCE from 1978 to 1986, the years encompassing Mr. Emerson's observations. That Detrex employed Transport drivers on fifteen deliveries does not render Mr. Emerson's testimony unduly prejudicial, because Detrex may be liable under 42 U.S.C. § 9607(a)(3) for arranging transport for disposal of a hazardous substance.

Detrex's motion to strike Mr. Emerson's deposition testimony must be denied.

### 3. John Graber

■ Mr. Graber testified that in the early to mid–1980s, he "heard about a spill out in the back" "from different people around the plant here, talking about it." He heard that somebody fell asleep while filling the tank, causing an overflow. Detrex objects on hearsay grounds.

The plaintiffs first respond that the Graber testimony is offered only to corroborate other evidence of the overflow spill. If the testimony is offered to prove the fact of the spill, however, it is hearsay. The plaintiffs then argue that the evidence is admissible to establish the time of the overflow spill, placing it in the years in which Detrex was the plaintiffs' sole supplier of TCE. The plaintiffs offer no authority for this use of the evidence. Finally, the plaintiffs argue that Mr. Graber's testimony is admissible under Rule 803(24). Mr. Graber's testimony provides no basis for evaluating the declarant, however; the sources of his information are completely unidentified. Accordingly, for the reasons set forth in the discussion with respect to Mr. Cartwright's testimony, Rule 803(24) provides no vehicle for admissibility.

Detrex's motion to strike the deposition testimony of Mr. Graber must be granted.

### 4. Ed Hosea

Mr. Hosea testified to the overflow spill that destroyed the asphalt. He testified that he was not at the plant on the day it occurred, but was told when he got back. He was told by "somebody" to look at the asphalt, and "they said" a Detrex driver had failed to hook his equipment up properly. He was unable to recall the date.

Detrex moves to strike on hearsay grounds. The plaintiffs respond with the first and third arguments raised with respect to Mr. Graber's testimony. For the reasons discussed above, those arguments must fail.

Detrex's motion to strike Mr. Hosea's testimony must be granted.

### 5. Richard Mann

Mr. Mann testified to having heard of the overflow spill and to having seen delivery spills, although he could not specify the time period in which he observed the delivery spills. Detrex moves to strike the testimony concerning the overflow spill as hearsay, and moves to strike the testimony concerning the delivery spills under Rule 403.

■ Mr. Mann's testimony about the delivery spills has substantial probative value that outweighs any risk of unfair prejudice. His testimony that the time period about which he spoke was before the second TCE storage tank was installed, an event that occurred after Detrex became sole supplier, makes his observations relevant, and the risk of unfair prejudice is negligible at the summary judgment stage.

■ With respect to the testimony about the overflow spill, the plaintiffs again seek refuge in Rule 803(24). Unlike most of the other declarants at issue in the motion to strike, Mr. Mann identified the source of his information: he said he heard about spill from Mr. Todd and night watchman Dewel Abner. As is discussed below, Mr. Todd says his information came in part from Mr. Mann; testimony that seeks its requisite foundation of personal knowledge from declarants who each disclaim personal knowledge cannot be said to bear sufficient circumstantial guarantees of trustworthiness.

The case for admissibility is stronger to the extent Mr. Mann was relating what he learned from Dewel Abner, who has not (in

this record) denied personal knowledge. Mr. Mann's attribution is, however, the only mention of Mr. Abner that the court has found in the record before it. The record contains nothing to suggest a basis for a determination of Mr. Abner's character for truthfulness, the consistency of his statements, or even the basis of his knowledge. Accordingly, the court must conclude that Mr. Mann's testimony about the overfill spill is inadmissible hearsay.

The motion to strike Mr. Mann's testimony about the delivery spills should be denied. The motion to strike Mr. Mann's testimony about the overfill spills must be granted.

### 6. Robert Todd

Mr. Todd was EPC's plant engineer. He testified to having observed the open-valve spill. He also testified to having been told of the overflow spill by John Graber, Dick Mann (and perhaps others), having seen the overflow spill's aftermath on the asphalt parking lot, and having suggested that the repair bill be sent to Detrex. Detrex objects to Mr. Todd's testimony about what caused the damage to the asphalt.

The plaintiffs respond by noting that shortly after the overflow spill, Mr. Todd wrote a memo, now lost, about the incident. The memo was based on information he had received from an EPC employee with first-hand knowledge of the incident. The memo, the plaintiffs argue, satisfied all requirements for a record of regularly conducted activity, and hence would be admissible under Fed.R.Ev. 803(6); accordingly, they conclude, Mr. Todd should be able to testify to the memo's contents in light of its unavailability. *See* Fed.R.Ev. 1004.

The court's research has disclosed no case that addresses the admissibility of verbal recollection of a lost business record prepared eleven years earlier, and the parties' research presumably has been equally fruitless. The cases cited by the plaintiffs relate to lost written instruments upon which suit was based, rather than written accounts of allegedly negligent acts. Assuming that Mr. Todd would be allowed to testify to the content of the lost memorandum, however, he did not do so. The deposition contains no suggestion that he was recounting, or was asked to recount, the content of the lost memorandum; he was testifying to his recollection of what others told him. That he may have made a contemporaneous memorandum does not render his recollection of what others told him admissible over a hearsay objection.

The plaintiffs also argue that Mr. Todd's testimony is admissible under Rule 803(24). They point to the circumstantial guarantees of trustworthiness present when one reports to his superiors, citing *Litton Systems, Inc. v. American Telephone and Telegraph Co.*, 700 F.2d 785, 818 (2nd Cir. 1983), *cert. denied*, 464 U.S. 1073, 104 S.Ct. 984, 79 L.Ed.2d 220 (1984). Mr. Todd, however, testified that his information about the overflow spill came from John Graber and Dick Mann. Mr. Mann, however, testified that he learned of the overflow spill from Mr. Todd, and Mr. Graber testified that he learned of the overflow spill from unidentified persons. Given that both identified sources of Mr. Todd's information disclaim personal knowledge of the overflow spill (although Mr. Todd also may have acquired information from others not identified, whose personal knowledge cannot be evaluated), the court cannot find that Mr. Todd's testimony bears sufficient circumstantial guarantees of trustworthiness for admissibility under Rule 803(24).

Detrex also moves to strike the portions of Mr. Todd's testimony in which he stated that the damage to the asphalt was caused by TCE. The court is not willing to hold that Mr. Todd lacks sufficient experience and training to testify that the damage he personally observed was consistent with a spillage of TCE. Even accepting the testimony to that extent, however, Mr. Todd has demonstrated no basis, other than inadmissible hearsay, for any opinion that the damage was caused by an overfill spill or by Detrex's negligence.

The motion to strike Mr. Todd's testimony concerning the overfill spill must be granted.

### 7. Henry Copenhaver

Mr. Copenhaver, an EPC employee, testified in his deposition that Bob Todd had

told him "that there was a spill and that we should contact whoever was involved in it and make them aware." He does not recall speaking to any supplier, although he identified the purchase orders for asphalt repair. Detrex moves to strike Mr. Copenhaver's testimony about the conversation with Mr. Todd.

■ The plaintiffs argue that Mr. Copenhaver's testimony is admissible to show notice to Detrex and is admissible under Rule 803(24). As discussed with respect to the Cartwright testimony, if the testimony is offered only to show notice, it is not hearsay. Mr. Copenhaver's testimony does not, however, show notice to Detrex; Mr. Copenhaver denied any recollection of notifying Detrex or any other supplier. The plaintiffs point to the testimony of Stan Miles of Detrex, who testified that Mr. Copenhaver called him and said there had been a spill and that Mr. Copenhaver would check into it. The Miles testimony is probative of notice, but the Copenhaver testimony is not.

The Copenhaver testimony is not admissible under Rule 803(24). Mr. Copenhaver knows no more about the overfill spill than Mr. Todd told him, and Mr. Todd's knowledge cannot be traced to anyone with personal knowledge of the overfill spill.

Accordingly, Detrex's motion to strike the Copenhaver testimony must be granted.

### 8. Robert Peterson

Mr. Peterson described the overflow spill. He disclaimed any personal knowledge of the spill; he heard about it from Mr. Todd. He also testified that when he was presented with the invoice to replace the asphalt parking lot, someone (he does not recall who) told him of the spill, and he relayed the information to Detrex. Detrex moves to strike on hearsay grounds.

■ The plaintiffs make several arguments in support of admissibility. First, they note that evidence introduced to show why a person acted as he did is not hear-

say, citing *United States v. Amahia,* 825 F.2d 177, 181 (8th Cir.1987). This argument is correct, although it would preclude the court from viewing Mr. Peterson's testimony as substantive proof of the overflow spill. *See United States v. Martinez,* 939 F.2d 412, 415 (7th Cir.1991).

The plaintiffs also argue that Mr. Peterson's testimony falls within Rule 803(24). Everything Mr. Peterson related about the overflow spill, however, came from Mr. Todd who, in turn, testified that his information came entirely from persons who disclaim personal knowledge of the overflow spill or unidentified persons. Notwithstanding the presence of some guarantees of trustworthiness inherent in a process of reporting within a business, the evidence nonetheless amounts to a totem pole of hearsay of undetermined length: Mr. Peterson relates what he was told by Mr. Todd, who relates what he was told by Messrs. Graber and Mann, who related what they were told by others, whose personal knowledge is uncertain.

■ Finally, the plaintiffs argue that Mr. Peterson's testimony is against his pecuniary interest, Fed.R.Ev. 804(b)(3), noting that Mr. Peterson was a defendant in the plaintiffs' parallel state court action. While such an argument might[3] render Mr. Peterson's statements admissible, it would not render admissible statements other persons made to Mr. Peterson; Detrex's motion to strike is addressed to the statements of others. *See* Fed.R.Ev. 805.

### 9. Dennis Selner

Mr. Selner testified to having seen the damage to the asphalt after the overfill spill. What he knows about the spill is what Mr. Todd told him. Detrex moves to strike his testimony about the cause of the spill on hearsay grounds. Again, the plaintiffs argue for admissibility under Rule 803(24). As discussed above, Mr. Todd (Mr. Selner's source of information) had no personal knowledge about the overfill spill, and acquired his information either from

---

**3.** The plaintiffs would have to provide a further explanation of why Mr. Peterson's challenged testimony was against his pecuniary interest, a point not immediately apparent from the deposition excerpt.

unidentified persons or from persons who also lacked personal knowledge. For the reasons discussed above, the court cannot find Mr. Selner's challenged testimony to be admissible under Rule 803(24).

The motion to strike Mr. Selner's testimony about the overfill spill must be granted.

### 10. David Smith

Mr. Smith testified to what Mr. Todd told him about the overfill and open-valve spills, to having seen the asphalt the day following the overfill spill, and to Mr. Todd having told him about Mr. Copenhaver's contact with Detrex about the incident. Detrex moves to strike these portions of Mr. Smith's deposition testimony as hearsay.

 The plaintiffs argue that Mr. Smith's testimony is admissible under Rule 803(24). They stress the consistency of Mr. Smith's testimony about the overfill spill with the accounts of others. Although consistency may be pertinent to determining admissibility under Rule 803(24), it is not determinative; repetition does not render hearsay admissible. More persuasive is the absence of any person shown to have personal knowledge of the overfill spill. If, as decided above, Mr. Todd cannot testify to what he was told about the overflow spill, Mr. Smith cannot testify to what Mr. Todd told him.

Because the summary judgment record already contains Mr. Todd's deposition testimony (based on personal knowledge) about the open valve spill and Mr. Miles's testimony about the conversation with Mr. Copenhaver, the motion to strike the remaining challenged portions of Mr. Smith's testimony is moot.

The motion to strike Mr. Smith's testimony must be granted insofar as it relates to the overfill spill.

### 11. Conclusion

 Following ruling on the pertinent portions of the motion to strike, the court agrees with Detrex in part. There is no evidence in compliance with Federal Rule of Civil Procedure 56(e) with respect to the overfill spill. To the extent the plaintiffs' claims arise from that allegation, Detrex is entitled to summary judgment. There is, however, evidence of compliance with Federal Rule of Civil Procedure 56(e) with respect to the delivery spills and the open-valve spill; to the extent the plaintiffs' claims arise from those allegations, the claims survive. CERCLA imposes no quantitative requirement on a release. *Louisiana–Pacific Corp. v. ASARCO, Inc.,* 735 F.Supp. 358, 361–362 (W.D.Wash. 1990).

### B. Second Motion to Strike

Detrex's second motion to strike addresses a document the plaintiffs submitted as an attachment to their reply to Detrex's response to the plaintiffs' partial summary judgment motion. Because that attachment neither strengthens the plaintiffs' case with respect to the overfill spill nor weakens the case with respect to the delivery spills and the open-valve spill, the issue is moot. The court is compelled to add, however, that Detrex's argument that the submission offends the district rules on summary judgment motions does not impress the court.

 District Rule 13 requires one opposing a summary judgment to identify the fact issues the opponent believes are in genuine dispute. Detrex has not done so, despite repeated reminders by the plaintiffs. As the plaintiffs note, the failure to comply with such a rule may constitute grounds for granting the summary judgment motion. *See, e.g., Appley v. West,* 929 F.2d 1176 (7th Cir.1991). The court has declined to follow that course in this case because Detrex has opposed the plaintiffs' motion vigorously, relying on the inadmissibility and absence of the plaintiffs' proof. Detrex's papers adequately identify those issues pertinent to summary judgment. The court believes it inappropriate, however, for a party who has ignored the rules to move to strike an adversary's submissions for failure to comply with the rules.

### C. Evidence of Compliance with NCP

 Detrex also moves to strike an exhibit to the plaintiffs' summary judgment

motion and the deposition testimony of John Mundell.

Exhibit 1 to the plaintiffs' memorandum in support of summary judgment consists of a report prepared by ATEC Associates, Inc., entitled *Review of Investigation and Remedial Activity Consistency with the National Oil and Hazardous Substances Pollution Contingency Plan.* Exhibit 13 is a portion of the deposition testimony of John Mundell, an ATEC employee. Plaintiffs' counsel contacted Mr. Mundell to review the documents and activities associated with the EPC site and determine whether the plaintiffs' investigative and remedial activities complied with the NCP. The report reviews the investigations of soil and groundwater contamination and remediation efforts at the EPC site and concludes that these efforts complied with the NCP.

Detrex asserts that the ATEC Report and Mr. Mundell's testimony are inadmissible expert opinions on a question of law. The plaintiffs argue that their consistency with the National Contingency Plan is a question of fact, and expert opinion is, therefore, appropriate.

Both parties cite *County Line Investment Co. v. Tinney,* 933 F.2d 1508, 1512 (10th Cir, 1991), in which the court determined that consistency with the NCP is an element of the CERCLA plaintiff's *prima facie* case. However, as the plaintiffs note, the court's determination on consistency with the NCP was made after an extensive factual record had been established. This point was made by *Carlyle Piermont Corp. v. Federal Paper Board Co.,* 742 F.Supp. 814, 819 (S.D.N.Y.1990), in which the court concluded that genuine issues of fact existed as to whether the plaintiff's action was removal or remedial, and whether the plaintiff complied with the appropriate NCP requirements. *See also Amland Properties Corp. v. Aluminum Co. of America,* 711 F.Supp. 784, 794 (D.N.J.1989).

The plaintiffs also cite *United States v. Mottolo,* 695 F.Supp. 615, 630 (D.N.H. 1988), in which the court stated that consistency with the NCP "is a triable issue of fact which goes to the amount, not the fact, of defendants' liability."

Detrex cites *Channel Master Satellite Systems, Inc. v. JFD Electronics Corp.,* 748 F.Supp. 373, 386 (E.D.N.C.1990), in which the court determined that the classification of an action as removal or remedial was an issue of law not suited for expert testimony. The court noted a factual dispute as to the cost effectiveness of the response action, which is one factor in compliance with the NCP. However, as to the other factors, the court found that the plaintiff did not substantially comply with the NCP requirements and summary judgment was appropriate.

The plaintiffs argue alternatively that if the determination of consistency with the NCP is a question of law, it still is appropriate to admit expert opinion testimony on this issue. The regulations are complex, and expert testimony would aid the court.

The plaintiffs also contend that even if the expert opinion is inadmissible as to consistency with the NCP, it is admissible as a summary of facts, citing *United States v. Schafer,* 580 F.2d 774 (5th Cir.), *cert. denied,* 439 U.S. 970, 99 S.Ct. 463, 58 L.Ed.2d 430 (1978). *Schafer* was a prosecution for tax evasion in which an IRS agent testified as an expert, giving his opinion as to the proper computation of the defendant's tax liability. The IRS agent prepared two charts summarizing the evidence presented at trial, and stated that all his figures were based upon direct testimony or documents admitted into evidence. The Fifth Circuit determined that a solid evidentiary foundation had been laid for the opinion, which was based on facts in evidence and presented to a properly instructed jury. 580 F.2d at 778.

Obvious problems arise in viewing the ATEC report as a summary at this stage of the litigation. The opinions do not rely on documents admitted into evidence; nothing at all has been admitted into evidence. In the spirit of *McFeely v. United States,* 700 F.Supp. at 418, and *Reed v. Ford Motor Co.,* 679 F.Supp. at 875, this defect should be resolved in favor of the summary judgment motion's opponent, but since the

plaintiffs and Detrex each have moved for summary judgment, such a resolution provides little assistance.

Courts proceeding under the Federal Rules of Evidence have demonstrated a reluctance to allow experts determine questions of law. *See, e.g., Specht v. Jensen,* 853 F.2d 805, 809–10 (10th Cir.1988), *cert. denied,* 488 U.S. 1008, 109 S.Ct. 792, 102 L.Ed.2d 783 (1989) ("when the purpose of the testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based, the testimony cannot be allowed. In no instance can a witness be permitted to define the law of the case"); *Adalman v. Baker, Watts & Co.,* 807 F.2d 359, 366 (4th Cir.1986) ("the line must be drawn between proper expert evidence as to facts, inferences to be drawn from those facts, and the opinions of the expert, on the one hand, and testimony as to the meaning and applicability of the appropriate law, on the other hand").

The Seventh Circuit has recognized, however, that in highly technical areas of law, the opinion of a properly qualified expert is admissible to determine whether a given course of conduct complied with the law. For example, in *United States v. Windfelder,* 790 F.2d 576, 581 (7th Cir.1986), the court found no error in allowing an Internal Revenue Service agent to give an opinion as to the proper tax consequences of a particular action by a taxpayer, or in allowing the agent to offer an analysis of the taxpayer's action as a necessary precedent to the agent's evaluation of the tax consequences.

The *Windfelder* court cited with favor the Eleventh Circuit's decision in *United States v. Gold,* 743 F.2d 800, 817 (11th Cir.1984), *cert. denied* 469 U.S. 1217, 105 S.Ct. 1196, 84 L.Ed.2d 341 (1985). In *Gold,* the court found no error in allowing properly qualified witnesses to testify whether particular claims were eligible for reimbursement under Medicare, as long as the district court properly instructed the jury concerning the weight that should be given expert testimony.

The court cannot find that the NCP presents any less technical an issue than do the tax code and Medicare regulations. Accordingly, pursuant to *Windfelder* and *Gold,* the court overrules the motion to strike the ATEC report. The excerpt of the Mundell deposition might require a different analysis in light of the absence of any basis for the opinion in the summary judgment record, *see Mid–State Fertilizer v. Exchange National Bank,* 877 F.2d 1333, 1339 (7th Cir.1989), but the admissibility of the ATEC report renders moot the motion to strike the cumulative Mundell opinion testimony.

Accordingly, the motion to strike the ATEC report is denied; the motion to strike the Mundell testimony is denied as moot.

## IV. SUMMARY JUDGMENT: THE CERCLA CLAIMS

Both parties move for summary judgment on the issue of liability on count I; Detrex also seeks judgment on several other counts. Detrex contends that the claims in Counts I and II are barred because: the plaintiffs failed to comply with the National Contingency Plan ("NCP") provided in CERCLA; the plaintiffs actively contributed to contamination at the site; and Detrex's sale of a useful product did not constitute the "disposal of hazardous waste" within the meaning of CERCLA.

### A. Responsible Party

Summary judgment may be granted as to liability in CERCLA cases where the plaintiff established the elements of a prima facie case and demonstrates that none of the statutory defenses applies. *Amoco Oil Co. v. Borden, Inc.,* 889 F.2d 664, 668 (5th Cir.1989); *United States v. Mottolo,* 695 F.Supp. at 620, 631. The plaintiffs submit that they have established the following elements necessary for a private party to recover costs under CERCLA:

 (1) the defendant is a responsible party under CERCLA;

 (2) a release or a threatened release of hazardous substances occurred;

 (3) the plaintiffs incurred response costs; and

(4) the response costs were necessary and consistent with the NCP.

42 U.S.C. § 9607. The plaintiffs note that CERCLA imposes strict liability, and, therefore, the plaintiff need not establish negligence. *General Electric Co. v. Litton Business Systems, Inc.*, 715 F.Supp. 949, 959 (W.D.Mo.1989), *aff'd*, 920 F.2d 1415 (8th Cir.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 1390, 113 L.Ed.2d 446 (1991); *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 889 F.2d 1146, 1150 (1st Cir.1989); *Rodenbeck v. Marathon Petroleum Co.*, 742 F.Supp. 1448, 1455–56 (N.D.Ind.1990).

As discussed above, the plaintiffs have presented undisputed evidence that releases of TCE occurred through delivery spills and the open-valve spill between 1978 and 1986, when Detrex was the plaintiffs' sole supplier of TCE. The summary judgment record provides an inescapable inference, opposable only through the sort of "metaphysical doubt" that will not preclude summary judgment, *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. at 586, 106 S.Ct. at 1355, that drivers of Detrex or Detrex's contractor, Transport, were responsible for those spills.

 Detrex argues that it was not a responsible party under CERCLA with respect to spills by Transport drivers. Count I seeks to hold Detrex liable under 42 U.S.C. § 9607(a)(1) as the "owner and operator of a ... facility"; 42 U.S.C. § 9601(9) defines "facility" as including a motor vehicle. Count II seeks to hold Detrex liable under 42 U.S.C. § 9607(a)(3), which addresses "any person who by contract ... arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person ..." 42 U.S.C. § 9601(29) incorporates the definition of "disposal" from the Solid Waste Disposal Act, 42 U.S.C. § 6903(3), which includes "spilling, leaking, or placing of any sold waste or hazardous waste on any land so that such sold waste or hazardous waste or any constituent thereof may ... [be] discharged into any waters, including groundwaters."

Detrex points to 42 U.S.C. § 9601(20)(B), which states,

> In the case of a hazardous substance which has been accepted for transportation by a common or contract carrier and except at provided in section 9607(a)(3) or (4) of this title, (i) the term "owner or operator" shall mean such common carrier or other bona fide for hire carrier acting as an independent contractor during such transportation, (ii) the shipper of such hazardous substance shall not be considered to have caused or contributed to any release during such transportation which resulted solely from circumstances or conditions beyond his control.

Detrex argues that since Transport was acting as a common carrier when transporting TCE to EPC on fifteen occasions, Transport, and not Detrex, was the "owner and operator" with respect to any spills on those occasions.

The plaintiffs argue that Detrex has misread § 9601(20)(B), which simply limits the liability of common carrier to specified circumstances. The plaintiffs argue that a contrary reading would be at odds with the policies behind CERCLA, as evidenced by the statutory structure and legislative history. *See* 126 Cong.Rec. E4196 (daily ed., Sept. 4, 1980); S.Rep. No. 848, 96th Cong., 2d Sess. 13 (1980). They argue that the third-party defense of § 9607(b)(3) would be superfluous.

In a case brought under § 9607(a)(1), however, the third-party defense is available to owners and operators, and the plaintiffs have tendered no theory under which Detrex could be found to be an "owner and operator of a ... facility" when Transport delivered TCE in Transport trucks. Detrex cannot be said to have owned the Transport trucks; Detrex cannot be said to have operated the Detrex trucks. Detrex is not a responsible party under § 9607(a)(1) with respect to the deliveries by Transport.

Undisputed evidence indicates that Detrex drivers spilled TCE during its deliveries, and that the "open valve" spill occurred during a Detrex delivery. Accordingly, analysis of Count I must continue.

■ Under Count II, however, Detrex's liability under arises from its contract or arrangement with the plaintiffs to transport the TCE. 42 U.S.C. § 9607(a)(3) makes no reference to "owner and operator"; accordingly, it is immaterial whether Transport or Detrex or both were "owner and operator" with respect to the TCE transported in Transport trucks.

### B. Consistency with NCP

■ To recover the costs of response to the release of a hazardous substance, a private party must have incurred response costs that are "consistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(B). The NCP is the plan for removal of hazardous substances created by 42 U.S.C. § 9605; its requirements are set forth in 40 C.F.R. § 300. Proof that the response costs were consistent with the NCP is an element of a prima facie case for recovery under 42 U.S.C. § 9607. *County Line Investment Co. v. Tinney*, 933 F.2d 1508, 1512 (10th Cir.1991).

### 1. Public Comment

■ Under the 1985 version of the NCP in effect when this case was filed, one seeking recovery under 42 U.S.C. § 9607 had to prove strict compliance with the NCP. The less onerous 1990 version in effect today requires substantial compliance with the NCP.[4] *County Line Investment v. Tinney*, 933 F.2d at 1514–15. Detrex argues that the 1985 version governs this case, but that the plaintiffs cannot show compliance under either standard. The plaintiffs argue that the 1990 version governs this case, but that they meet the requirements of both versions.

The plaintiffs cite the comments of the Environmental Protection Agency ("EPA") as support for the position that the EPA intended the "substantial compliance" standard of the 1990 version to apply retroactively. With regard to retroactivity, the EPA stated:

Some commentators expressed the concern that PRPs [potentially responsible parties] may attempt to impose the new definition of "consistency with the NCP" on private cleanups that are already complete or underway. They assert that it should be made clear that the rule does not apply to private response actions initiated prior to the effective date of the revised NCP.

In response, EPA does not believe that it is appropriate to grandfather cleanups that are already "underway." Such a position would result in an exemption from this rule for actions that were initiated prior to the effective date, but which may continue for years (such as long-term ground-water remediation actions). Further, EPA does not believe that this issue will pose a serious problem to private parties for several reasons. First, the rule's requirement of "substantial compliance" with potentially applicable NCP requirements affords private parties some latitude in meeting the full set of revised NCP provisions. Second, private parties have been on notice for over a year that EPA intended to require compliance with the principal mandates of CERCLA—those required for a "CERCLA-quality cleanup," as discussed above—as a condition for being "consistent with the NCP." ...

Finally, the requirement for "consistency with the NCP" has been a precondition to cost recovery under CERCLA section 107 since the passage of the statute in 1980, and pursuant to the 1985 NCP, consistency with the NCP was measured by compliance with a detailed list of NCP requirements: thus, on-going actions should already comply with the 1985 provisions.

55 Fed.Reg. 8795 (1990).

Logic suggests that the plaintiffs' actions, taken between 1985 and 1990, should be governed by the 1985 NCP. It appears from the language quoted in the Federal Register that the EPA, whose views are

---

**4.** See 40 C.F.R. § 300.430(c), (e); 40 C.F.R. § 300.700(c)(6) (1990) ("Private parties undertaking response actions should provide an opportunity for public comment concerning the selection of the response action based on substantially equivalent state and local requirements.").

entitled to substantial weight, *Chevron, U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984), intends for the private parties seeking response costs pursuant to CERCLA to meet the substantial compliance standard of the 1990 NCP. The court need not resolve the issue, however, because here, as in *County Line Investment Co. v. Tinney*, 933 F.2d 1508, the results are the same under either analysis.

■■■ Under 40 C.F.R. § 300.67 of the 1985 version of the NCP, remedial actions must be provided to the public for review and comment for a period of at least twenty-one days, and in most circumstances, public meetings are to be held during the public comment period.

Detrex argues that the plaintiffs allowed the populace no involvement in the choice of remedy. In *Channel Master Satellite Systems, Inc. v. JFD Electronics Corp.*, 748 F.Supp. at 390, the court noted the importance of public knowledge and involvement in the selection of a remedial response, particularly in a dispute between private litigants, in which the public would be unrepresented by the State. In this case, however, the public was provided notice and an opportunity to review for thirty days the plaintiffs' application for a National Pollutant Discharge Elimination System ("NPDES") permit. The NPDES permit was to allow the plaintiffs to discharge that water which was extracted from the groundwater and treated to remove most of the TCE. No public hearing was held because the Indiana Department of Environmental Management did not consider the comments which were submitted as constituting significant public interest. The plaintiffs argue that this thirty day public comment period met the requirements of the NCP.

In *Artesian Water Co. v. Government of New Castle County*, 659 F.Supp. 1269 (D.Del.1987), *affirmed*, 851 F.2d 643 (3d Cir.1988), the court considered an argument that the plaintiff's feasibility study, which was the subject of two public meetings and a public hearing, met the require-

ments of 40 C.F.R. § 300.67. The district court concluded, however, that the plaintiff's feasibility study did not meet the definition of "feasibility study" within the meaning of the NCP and, therefore, the court did not resolve the factual dispute over whether the proffered feasibility study was made available for public comment. "Public comment on a document that does not determine the nature and extent of a hazardous release or evaluate proposed remedies is not consistent with section 300.67(d)." 659 F.Supp. at 1297.

In this case, as in *Artesian Water*, the plaintiffs reasoned that the notice provided in the NPDES permit application satisfied the NCP public comment requirement. The information provided with the NPDES permit, however, does not appear to meet the requirements of the 1985 version of the NCP, because it does not set forth feasibility studies that outline alternative remedial measures. 40 C.F.R. § 300.67(d) (1986). Further, the 1985 version of the NCP contemplates that a public meeting should be held in most circumstances. In this case, although some members of the public had sent comments to the Indiana Department of Environmental Management, it was determined that a public meeting was not necessary because there had not been significant public interest.

Nonetheless, public comment was received. Members of the general public submitted comments to IDEM, and IDEM responded to them in writing. The public's comments related to the need for a public hearing, the method of filtering and monitoring the groundwater, and acceptable levels of contamination. Even the 1985 NCP did not require public hearings in all cases.

### 2. RI/FS

■■■ Detrex argues that the plaintiffs did not "provide an opportunity for public comment concerning the selection of the response action," as required by the 1990 version, because they did not submit a proposed plan that supplements the Remedial Investigation/Feasibility Study ("RI/FS"), as required by 40 C.F.R. § 300.430(f)(2) (1990). Further, the plaintiffs did not submit a plan to the public for comment. 40

C.F.R. § 300.430(f)(3) (1990). Detrex notes that the purpose of the public comment period is to allow those most affected (nearby residents) to have a say in the type of remedial measures undertaken. Public notice of the NPDES permit was issued on March 9, 1988, but construction of the plaintiffs' choice of remedy, air stripping towers, was already under way in February 1988. Thus, Detrex argues, the public had no voice in the type of remedy.

The defendant in *General Electric Co. v. Litton Business Systems, Inc.*, 715 F.Supp. at 959, contended that the plaintiff did not comply with NCP's criteria for removal or remedial actions. Among other things, the defendant argued that the plaintiff should have provided for public comment. The court agreed with the plaintiffs that a public hearing was not required because GE was complying with legally applicable or relevant and appropriate state requirements that the waste be removed, and the input of the state natural resources department served as a substitute for public comment. "Statutes such as CERCLA which were enacted for the protection and preservation of public health are to be given an extremely liberal construction for the accomplishment of their beneficial objectives." 715 F.Supp. at 961. Detrex is correct *General Electric* is strictly on point because it concerned a removal action, while this case concerns a remedial action. Nonetheless, the admonition of liberal construction of statutes such as CERCLA applies with equal force to remedial actions under CERCLA.

In *County Line Investment Co. v. Tinney*, 933 F.2d at 1514, the Tenth Circuit noted that, "Both the 1985 and 1990 NCPs require, at a minimum, that a private party attempting to act 'consistent with the national contingency plan' provide an opportunity for public comment on its selection of the response action for the site." In *Tinney*, the plaintiffs did not involve the public in the selection of remedial measures, although they were in communication with state and federal officials and

complied with state regulations regarding the closure of their landfill. In this case, however, public comment was invited in the notice of the application for the NPDES permit. Members of the public submitted comments, to which state officials responded. Further, had the state officials decided that there was significant public interest, a hearing on the NPDES application would have been held.

Therefore, the court concludes that the plaintiffs complied with the "public participation" requirements of both the 1985 and 1990 versions of the NCP.

■ Detrex also contends that the plaintiffs did not formulate and tender for public comment a RI/FS pursuant to the 1985 NCP. Under the 1985 NCP, 40 C.F.R. § 300.68,[5] a RI/FS must be conducted before remedial action is taken pursuant to CERCLA in order to determine the nature and extent of the threat posed by the release of a hazardous substance and in order to evaluate proposed remedies.

In *Artesian Water Co. v. Government of New Castle County*, 659 F.Supp. 1269, the court determined that a report known as "Water 2000" did not meet the criteria for a RI/FS set forth in the 1985 NCP. The report did not evaluate alternative remedies, and the affidavit of the administrator of the agency that drafted the Water 2000 report stated that water supply options and removal and remedial actions were never considered specifically from the standpoint of providing a replacement for contaminated groundwater. 659 F.Supp. at 1295. Therefore, the court concluded that the Water 2000 report was inconsistent with the NCP, holding that while another, redundant RI was unnecessary, "any document purporting to comply with the FS requirement must evaluate alternatives for remedying a release of hazardous substances, and this the Water 2000 report utterly fails to do." 659 F.Supp. at 1295–96. Detrex claims that in this case the plaintiffs conducted no study.

---

**5.** Both parties analyzed the plaintiffs' compliance with the RI/FS requirements under the

1985 version of the NCP.

The plaintiffs offer Exhibit 1 to their motion partial summary judgment motion, the report by ATEC Associates, as proof that they complied with the NCP. The ATEC report refers to documents upon which ATEC relied in forming its opinion as to compliance with the NCP. The reference to those documents indicates that the plaintiffs engaged in an investigation of the contamination and possible remedies. Detrex challenges the legal sufficiency of the ATEC report, but offers no opposing evidence. As noted above, the ATEC report is not legally insufficient. It stands as undisputed evidence that the plaintiffs complied with the RI/FS requirements of the NCP.

### C. Clean Hands Defense

■ Detrex argues that the plaintiffs cannot recover response costs pursuant to CERCLA because EPC actively contributed to contamination at the manufacturing site. Detrex submits evidence that EPC employees saw TCE waste oil, known as "stillbottoms", on the ground in the waste storage area, that a forklift driven by an EPC employee punctured a drum containing TCE, that TCE dripped from the hand degreaser onto the floor, that many years ago EPC employees washed their tools and the floor with TCE, and that various accidents caused TCE spills. Detrex claims that Congress did not intend for parties that pollute to recover response costs. Detrex cites several cases which, it claims, implicitly support this conclusion. However, the court agrees with the plaintiffs that the cases Detrex cites do not support the conclusion that a party that has been responsible for groundwater contamination cannot recover response costs from another party that is responsible for contamination.

In *General Electric Co. v. Litton Industrial Automation Systems, Inc.*, 920 F.2d at 1418, the defendant claimed that the plaintiff could not recover under CERCLA because the plaintiff was motivated by the desire to avoid liability rather than the desire to respond to hazardous substance pollution. The Tenth Circuit rejected the notion that unclean hands is a defense to CERCLA liability. The court noted that

CERCLA is a strict liability statute, subject only to the defenses that the release was caused by an act of God, an act of war, or the unforeseeable acts of a third party not in a contractual relationship with the defendant, who was exercising due care with respect to the hazardous substance. *See also Smith Land & Improvement Corp. v. Celotex Corp.*, 851 F.2d 86, 90 (3rd Cir. 1988), *cert. denied*, 488 U.S. 1029, 109 S.Ct. 837, 102 L.Ed.2d 969 (1989); *United States v. Kramer*, 757 F.Supp. 397, 428 (D.N.J. 1991).

In *Allied Corp. v. Acme Solvents Reclaiming, Inc.*, 691 F.Supp. 1100, 1119 (N.D.Ill.1988), the district court discussed expressed Congressional intent to allow wrongdoers to recover against their compatriots, and noted that an "unclean hands" defense would undermine the policies on which CERCLA is based, because willing contributors would postpone cleanup until all agreed to participate. 691 F.Supp. at 1119. This court agrees with the *Allied* court that applying the unclean hands doctrine against a CERCLA plaintiff who may have caused the release of hazardous substances would defeat CERCLA's purpose. The plaintiffs' possible contribution to groundwater contamination does not bar their CERCLA claims.

### D. Disposal

■ Count II alleges that Detrex arranged for the disposal of TCE. Detrex argues that it is not liable because its sale of TCE, a useful manufacturing chemical, was not a disposal under 42 U.S.C. § 9607(a)(3). Detrex relies on *Prudential Insurance Co. of America v. United States Gypsum*, 711 F.Supp. 1244, 1254–1255 (D.N.J.1989), which held that since there was no affirmative act to get rid of asbestos except by sale for use as part of a complete, useful product, there was no disposal, notwithstanding that the asbestos eventually began to pose a health risk by flaking off. The transfer was not tantamount to a disposal. *See also Edward Hines Lumber Co. v. Vulcan Materials Co.*, 685 F.Supp. 651 (N.D.Ill.1988), *affirmed*, 861 F.2d 155 (7th Cir.1988).

The plaintiffs respond with the definition of "disposal" found in the Solid Waste Disposal Act, 42 U.S.C. § 6903(3):

> The term "disposal" means the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters.

CERCLA incorporates this definition of disposal. 42 U.S.C. § 9601(29). The plaintiffs also note that *Prudential Insurance* involved a claim for compensation for the removal of asbestos, and the court found that CERCLA did not apply to asbestos-containing products that were useful when sold and used as intended. The TCE at issue here, however, was not useful after it was spilled on the ground. If the TCE was spilled when it was delivered, it was not used as intended by the parties.

In *Edward Hines Lumber Co. v. Vulcan Materials Co.*, 685 F.Supp. 651, the court found that liability did not attach to an innocent supplier of a hazardous substance who made no decision to dispose of the hazardous substance. The plaintiffs argue that Detrex made decisions as to delivery, and that their spills during delivery constitute disposals.

The court agrees with the plaintiffs. Although the plaintiffs selected the site of delivery, Detrex selected the method of delivery and the safeguards that would surround the deliveries. The plaintiffs had no say in whether the Detrex driver would close the valve on the day of the "open valve" spill.

### E. Conclusion

Based on the foregoing, the court concludes that the defendants are entitled to judgment as a matter of law on Count I insofar as Count I relies on the alleged overflow spill or delivery spills by Transport drivers. Judgment on the overflow spill claim is appropriate because the summary judgment record contains no evidence that Detrex caused an overflow spill.

Judgment on the delivery spills is appropriate because there is no showing that Detrex was an "owner and operator" on those occasions.

Insofar as Count I is based on the open-valve spill and delivery spills during deliveries by Detrex drivers, however, the plaintiffs have demonstrated their entitlement to judgment as a matter of law on the issue of liability. Undisputed evidence demonstrates that Detrex owned and operated the trucks, and hence was a responsible party. Undisputed evidence indicates that Detrex caused a release of a hazardous substance on those occasions. Undisputed evidence (the ATEC report) indicates that the plaintiffs incurred response costs that were necessary and consistent with either potentially applicable version of the NCP.

Insofar as Count II is concerned, the defendants are entitled to judgment as a matter of law insofar as that count is based on the alleged overfill spill. The defendants are not entitled to judgment as a matter of law on the remaining issues in Count II, and the plaintiffs have not sought summary judgment on Count II.

### V. STATE LAW CLAIMS

The remaining counts of the complaint at issue in this motion are based on common law. The parties agree that Indiana law applies.

### A. Breach of Contract; Notice

Count IV of the complaint alleges that an implied term existed in the contract between the plaintiffs and Detrex that required Detrex to deliver TCE without spillage and without causing environmental damage. The plaintiffs allege that Detrex breached this implied term. Detrex seeks summary judgment, arguing that the parties' transaction was a sale of goods, governed by the Uniform Commercial Code. Under IND.CODE 26-1-2-607(3)(a), for a buyer to recover for a seller's breach, "The buyer must, within a reasonable time after he discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy." Detrex contends that the plaintiffs did not give Detrex

timely and sufficient notice of its breach to entitle them to a remedy.

Detrex notes that though spills allegedly occurred in the early 1980s, the plaintiffs waited until 1986 to "voice their displeasure" in an August 27, 1986 letter notifying Detrex that EPC had a claim against Detrex arising out of spillage at the EPC plant. The letter informed Detrex that Miles Laboratories had asserted that EPC is liable for sewer charges Miles had incurred in disposing of contaminated water. The letter also informed Detrex that an investigation revealed that TCE had migrated from EPC to Miles' property. Detrex states that this letter is the only formal notice it received.

Detrex argues that a seller has a right to rely upon a transaction's finality after an elapse of time, citing *Courtesy Enterprises, Inc. v. Richards Laboratories*, 457 N.E.2d 572, 577 (Ind.App.1983). The *Courtesy Enterprises* court stated that if "the buyer knew of the existence of alleged defects within a reasonable period of time and did not notify the seller of his dissatisfaction for some time after that, his actions would not be those of a reasonable merchant concerned with saving the transaction and with avoiding litigation." 457 N.E.2d at 577.

■■■ Detrex is correct that timely notice of a seller's breach "is a substantive condition precedent to recovery" and a "buyer's failure to provide timely notice waives its right to assert any breach." *McClure Oil Corp. v. Murray Equipment, Inc.*, 515 N.E.2d 546, 554 (Ind.App.1987). The plaintiffs, however, argue that no particular form of notice is required, and submit that EPC gave Detrex notice of an overfill spill in 1980. They note the telephone call in which Mr. Copenhaver of EPC told Mr. Miles of Detrex that there had been a spill. As noted above, however (*see* Part III–A, *supra*), the summary judgment record does not establish the overfill spill's occurrence. Notice of an alleged event on which suit cannot be based cannot satisfy the requirement in IND.CODE 26–1–2–607(3)(a) of timely notice with respect to the other, actionable breaches.

■■■ The plaintiffs also argue that their 1986 letter was timely because the time for notification begins to run when the buyer knew of should have known of the breach. They argue that the reasonableness of any delay in notifying the seller of a breach depends on the nature of the breach, the type of purchaser, and the possible prejudice to the seller. If the breach is a latent one, the reasonable time for giving notice begins to run when the breach should have been discoverable. The plaintiffs did not learn of the TCE contamination in the soil and groundwater until March, 1986.

The evidence upon which the plaintiffs rely to establish the occurrence of the delivery spills and open-valve spills defeat this argument. The breach alleged in Count IV consists of spills, not groundwater contamination. The plaintiffs knew of those spills when they occurred, but did not notify Detrex until years later. Detrex is entitled to judgment as a matter of law on Count IV.

### B. Trespass

■■■ Count V asserts that Detrex committed a trespass when it spilled TCE at the site. Detrex claims that the plaintiffs cannot meet their burden of proving the essential elements of trespass under Indiana law, which are: (1) that the plaintiff was in possession of the land; and (2) that the defendant entered the land without right. *Sigsbee v. Swathwood*, 419 N.E.2d 789, 799 (Ind.App.1981). Detrex argues that because it had permission to enter the EPC premises to make deliveries, it cannot be liable for trespass. *See Bennett v. McIntire*, 121 Ind. 231, 23 N.E. 78 (1889); *City of Bloomington v. Westinghouse Electric Corp.*, 891 F.2d 611, 615 (7th Cir. 1989).

The plaintiffs claim that although Detrex initially had permission to enter the EPC site, it exceeded the scope of its permission and became a trespasser when it spilled TCE. They cite *Indiana & Michigan Electric Co. v. Stevenson*, 173 Ind.App. 329, 363 N.E.2d 1254 (1977), in which property owners claimed that a public utility commit-

ted a trespass and an unconstitutional taking when it which entered their land with permission to conduct a survey and cut growing crops to complete its task. The court determined that the utility company had no right to destroy the crops. 363 N.E.2d at 1259–60. The court employed a Fifth Amendment analysis, however, and did not explicitly state that the defendants' action amounted to a common law trespass.

Detrex cites several Indiana cases for the proposition that a party entering upon the land of another with permission does not become a trespasser even if the party abuses the privilege. *See Bennett v. McIntire*, 121 Ind. 231, 23 N.E. 78 (1889). In *Spades v. Murray*, 2 Ind.App. 401, 405, 28 N.E. 709, 710 (1891), the Court of Appeals stated that where a party enters with authority and then exceeds or abuses its authority, no trespass has been committed, and relief must be found under another remedy. *See also* Restatement (Second) of Torts § 214.

The case law convinces the court that the plaintiffs have no state law trespass remedy against Detrex. There is no dispute that Detrex drivers had permission to enter the EPC site. The claim that Detrex negligently and recklessly spilled TCE while at the site does not make Detrex or its drivers trespassers. Therefore, Detrex is entitled to summary judgment as to Count V.

## C. Drivers' Negligence

In Count VI, the plaintiffs allege that the drivers who delivered TCE were negligent. Detrex claims that this count must fail because the plaintiffs present no evidence respecting the applicable standard of care for truck drivers delivering chemicals in the 1980s and 1980s. Detrex contends that expert testimony is required to establish the standard of care for handling TCE. Detrex cites *Ellis v. Smith*, 528 N.E.2d 826, 828 (Ind.App.1988), a medical malpractice action in which the plaintiff claimed that he did not give informed consent for an operation. The court stated that, "The general rule is that expert medical opinion testimony is required to establish the content of reasonable disclosure unless the

situation is clearly within the realm of laymen's comprehension, as where disclosure is so obvious that laymen could recognize the necessity of such disclosure."

The plaintiffs offer several cases in which the courts have stated that in negligence actions there is one standard of care—that of a reasonable person under the circumstances. *See Neal v. Home Builders, Inc.*, 232 Ind. 160, 111 N.E.2d 713 (1953); *Central Transport, Inc. v. Great Dane Trailers, Inc.*, 423 N.E.2d 675, 678 (Ind.App.1981); *P–M Gas & Wash Co., Inc. v. Smith*, 178 Ind.App. 457, 383 N.E.2d 357 (1978). The court agrees with the plaintiffs' argument that the reasonable handling of TCE is not beyond the ken of the ordinary layperson. Although the ordinary person is not familiar with the chemical properties of TCE, the ordinary person can understand that TCE is a hazardous substance which should be handled in such a way that it is not released into the environment. Therefore, unlike the situation in medical malpractice cases, in this case, expert testimony on the reasonable standard of care is not a necessary element in the plaintiffs' prima facie case.

The plaintiffs also argue that Detrex's conduct constitutes negligence *per se* because Detrex violated a legal duty to report and clean up its TCE spills, as set forth in IND.ADMIN.CODE tit. 330.1, r. 1–6–2 (1974). The violation of a statute intended to protect the class of persons in which the plaintiff is included and intended to prevent the type of harm which has occurred as a result of the violation of statute is negligence *per se*. *Rubin v. Johnson*, 550 N.E.2d 324, 329 (Ind.App. 1990). Although violation of a statute may be negligence *per se*, however, violation of an administrative regulation is only evidence of negligence under Indiana law. *Hodge v. Nor–Cen, Inc.*, 527 N.E.2d 1157, 1160, n. 3 (Ind.App.1988). Therefore, the court cannot conclude that Detrex's failure to report, contain, and clean up the TCE spill in violation of an Indiana regulation is negligence *per se*.

The plaintiffs also cite 42 U.S.C. § 9603(a), which imposes a duty upon a

person in charge of a facility to notify the National Response Center "as soon as [the person] has knowledge of any release ... of a hazardous substance from such ... facility in quantities equal to or greater than those determined pursuant to section 9602...." However, the plaintiffs have not established that Detrex had any knowledge of a release of a certain quantity of TCE.

Although the court does not accept the plaintiffs' theory that negligence per se applies to this case, the court declines to grant summary judgment in Detrex's favor as to Count VI.

### D. Negligent Hiring

Detrex claims that summary judgment should be granted in its favor as to Count VII, which alleges that Detrex negligently hired and trained its delivery drivers. Detrex claims that to prevail on this count, the plaintiffs would have to prove that Detrex negligently hired and trained each of the five drivers who delivered TCE to EPC, apparently because it has not been established which driver or drivers spilled TCE during delivery. Detrex notes that no evidence established that any of the drivers had a poor driving record or that any of the drivers had a physical or mental handicap or a criminal disposition. The record before the court does not show that any of the drivers had been fired from a previous job, although Detrex fired one of the drivers because of his inability to handle the truck.

■ Indiana recognizes a cause of action based on negligent hiring, *Tindall v. Enderle*, 162 Ind.App. 524, 320 N.E.2d 764 (1974), but the negligent hiring theory applies only to special situations, and is not applicable when the employer stipulates that the employee was acting within the scope of his or her employment. *Tindall*, 320 N.E.2d at 767–68; *Lange v. B. & P. Motor Express, Inc.*, 257 F.Supp. 319 (N.D.Ind.1966). In such cases, "the doctrine of *respondeat superior* provides the proper vehicle for a direct action aimed at recovering the damages resulting from a specific act of negligence committed by an employee within the scope of his employment." *Tindall*, 320 N.E.2d at 768.

■ The plaintiffs contend that the two drivers who were deposed admitted that they had spilled TCE in deliveries at other places. The deposition testimony indicates that one driver, Dennis Butler, was present at a TCE spill, but does not state that these drivers caused spills. Further, the plaintiffs contend that the drivers' training was "minimal". No such conclusion may be reached without reference to standard practice in training drivers of hazardous substances. The two drivers' depositions indicate that they received literature informing them of the nature of TCE and they were instructed in how to handle it. Therefore, the court agrees with Detrex that summary judgment should be granted as to the claim in Count VII that Detrex negligently hired and trained its drivers.

■ The plaintiffs also argue that the doctrine of *res ipsa loquitur* applies to this case. Under this doctrine, an inference of negligence is created by a showing that (1) the injuring instrumentality was under the exclusive management and control of the defendant or his servants and (2) in the ordinary course of things, such an accident does not occur if those with management and control use proper care; such a showing shifts a burden of production to the defendant. *Hammond v. Scot Lad Foods, Inc.*, 436 N.E.2d 362, 364 (Ind.App.1982).

■ The plaintiffs have not produced evidence to show that the instrumentality which caused TCE contamination was within Detrex's exclusive control. As the parties have agreed, Detrex used an independent carrier to make several of the TCE deliveries. Therefore, even if the spills occurred because of Transport's negligence and Detrex is liable under CERCLA for Transport's negligence, the evidence does not show that Detrex has exclusive control over Transport. Therefore, the court disagrees with the plaintiffs' argument that *res ipsa loquitur* applies.

The defendants are entitled to judgment as a matter of law on Count VII of the complaint.

*E. Abnormally Dangerous Activity*

■■■■■ Detrex claims entitlement to summary judgment on the plaintiffs' claim that Detrex is strictly liable for damages because its delivery of TCE constituted an "abnormally dangerous activity."[6] Under Indiana law, a party who carries on an abnormally dangerous activity is strictly liable for the harm resulting from the activity even though that party may have exercised the utmost care to prevent the harm. *Bridges v. Kentucky Stone Co.,* 425 N.E.2d 125 (Ind.1981); Restatement (Second) of Torts § 519 (1977). The factors considered in determining whether an activity is abnormally dangerous are:

(a) existence of a high degree of risk of some harm to the person, land or chattel of others;

(b) likelihood that the harm that results from it will be great;

(c) inability to eliminate the risk by the exercise of reasonable care;

(d) extent to which the activity is not a matter of common usage;

(e) inappropriateness of the activity to the place where is carried on; and

(f) extent to which its value to the community is outweighed by its dangerous activities.

Restatement (Second) of Torts § 520 (1977). The inquiry is not on the hazardous substance's dangerous propensities, but on the defendant's activity with regard to the substance. *Indiana Harbor Belt Railroad Co. v. American Cyanamid Co.,* 916 F.2d 1174, 1181 (7th Cir.1990); *Erbrich Products Co., Inc. v. Wills,* 509 N.E.2d 850, 857 (Ind.App.1987). The activity at issue here is Detrex's transportation of TCE.

The Restatement's first and second factors favor the plaintiffs. The handling of TCE involves a high degree of risk to persons and land, and it is likely that the harm that results from the release of TCE would be great. The third factor, however, favors Detrex: it appears from the Detrex drivers' descriptions of their techniques that the exercise of reasonable care can eliminate the risk of TCE release.

In *Smith v. Kauffman,* 174 Ind.App. 222, 366 N.E.2d 1195, 1199 (1977), a wrongful death action resulting from a gasoline explosion, the court rejected the plaintiff's proposed jury instruction that the refueling of a crane was an extra-hazardous activity. The Court of Appeals affirmed, stating that "where the doing of a task is safe when properly executed it is not intrinsically dangerous and absolute liability does not attach.... Since the filling of a gasoline tank is not an extra-hazardous activity in and of itself the giving of appellant's Instruction No. 7 would have drawn upon an incorrect theory of the law." Similarly, in this case, the pumping of a dangerous fuel, when properly done, is not so intrinsically dangerous that absolute liability must attach.

The fourth factor also favors Detrex: although TCE is not a common household fuel, it is an industrial solvent, and pumping it from one tank into another is not unusual.

Finally, the fifth and sixth factors support Detrex. EPC found TCE to be a very useful solvent and used it for many years. *See City of Bloomington v. Westinghouse Electric Corp.,* 891 F.2d 611, 615–16 (7th Cir.1989). EPC also had it delivered to its storage tanks and drew it from the tanks to use it. Therefore, EPC determined where the activity of delivering TCE would be conducted. EPC cannot claim that the value of delivery TCE is outweighed by its danger to the community. The plaintiffs note that the locality of Elkhart's drinking water must be taken into account, but EPC determined where to locate its plant and directed its suppliers to deliver solvents there.

For these reasons, summary judgment must be granted in Detrex's favor on Count VIII.

---

**6.** The plaintiffs claimed in Count VIII that Detrex was engaged in an "ultrahazardous activity". However, the parties now agree that the modern term is "abnormally dangerous activity".

### F. Conceded Claims

Detrex also sought summary judgment as to the nuisance claim in Count IX and the indemnity claim in Count XIII. The plaintiffs withdrew their nuisance and indemnity claims, and the court therefore grants summary judgment on Counts IX and XIII.

### G. Punitive Damages

Detrex claims that the plaintiffs are not entitled to punitive damages. As Detrex notes, Indiana requires plaintiffs to establish "by clear and convincing evidence, all of the facts that are relied upon ... to support ... recovery of punitive damages." IND.CODE 34-4-34-1; *Orkin Exterminating Co., Inc. v. Traina*, 486 N.E.2d 1019, 1022 (Ind.1986) (punitive damages are penal in nature and therefore require a higher standard of proof than the preponderance of the evidence standard). The plaintiff must show by clear and convincing evidence "that the defendant acted with malice, fraud, gross negligence, or oppression which was not the result of mistake of law or fact, honest error of judgment, overzealousness, mere negligence or other human failing." *Lazarus Dept. Store v. Sutherlin*, 544 N.E.2d 513, 527 (Ind.App. 1989). Detrex submits that the plaintiffs cannot show such evidence.

The plaintiffs claim that the issue of punitive damages is unsuited for disposition by summary judgment, citing *Spangler v. Sears, Roebuck & Co.*, 752 F.Supp. 1437, 1447 (S.D.Ind.1990) ("because punitive damages issues are typically matters of 'degree' they are uniquely unsuited for disposition by pretrial motion."). The plaintiffs also cite *Werlein v. United States*, 746 F.Supp. 887, 907 (D.Minn.1990), in which the court states that, " 'Summary judgment is available in punitive damage cases. The standard for obtaining summary judgment, however, is an onerous one, and a summary judgment disposing of such claims will rarely be granted.' " (quoting Alsop and Herr, *Punitive Damages in Minnesota Products Liability Cases: A Judicial Perspective*, 11 Wm. Mitchell L.Rev. 319, 326-27 (1985)).

Citing *Reed v. Ford Motor Co.*, 679 F.Supp. 873, 878 (S.D.Ind.1988), the plaintiffs further argue that the court cannot stand in the shoes of the trier of fact when making a determination of a summary judgment motion. *Reed* recognized that the court "at the summary judgment stage will ... not have the benefit of all the evidence the jurors will actually hear in the context they will hear it.... the court cannot make value judgments that could arise over what constitutes iniquitous ... conduct." 679 F.Supp. at 877. However, the *Reed* court also recognized that "this question is not always within the sole province of the jury, because there is certain conduct, such as that described in *Orkin [Exterminating Co, Inc. v. Traina]*, 486 N.E.2d 1019, 1024 (Ind.1986), which cannot reasonably be said to constitute more than mere negligence." 679 F.Supp. at 877, n. 3. In *Orkin*, the court found as a matter of law that the evidence was insufficient to support an award of punitive damages. 486 N.E.2d at 1024.

The plaintiffs have presented evidence that there were numerous spills of TCE upon delivery during the time that Detrex was EPC's sole supplier of TCE. This, the plaintiffs argue, is evidence of Detrex's obdurate conduct, which would support an award of punitive damages. The court cannot conclude at this stage that there is no evidence from which reasonable jurors could find, by a clear and convincing standard, that punitive damages should be awarded. *See Spearman v. Delco Remy Div. of General Motors Corp.*, 717 F.Supp. 1351, 1361 (S.D.Ind.1989). Therefore, the court declines to grant summary judgment as to the plaintiffs' claim for punitive damages.

### VI. ORDER

For the foregoing reasons, the court hereby:

A. GRANTS IN PART and DENIES IN PART Detrex's first motion to strike, as set forth in Parts III–A and III–C of this memorandum.

B. DENIES Detrex's second motion to strike.

C. GRANTS IN PART the plaintiffs' motion for partial summary judgment. The plaintiffs are granted judgment as a matter of law on the issue of Detrex's liability on Count I of the complaint insofar as Count I is based on the "open-valve spill" and "delivery spills" during deliveries by Detrex drivers. The plaintiffs' motion for partial summary judgment on Count I is denied in all other respects.

D. GRANTS IN PART the defendant's motion for summary judgment. The motion is granted, and Detrex is entitled to judgment as a matter of law, with respect to the following:

1. As to Count I, insofar as Count I relies on the alleged overflow spill or delivery spills by Transport drivers;

2. As to Count II, insofar as Count II is based on the alleged overfill spill;

3. As to Count IV;

4. As to Count V;

5. As to Count VII;

6. As to Count VIII;

7. As to Count IX; and

8. As to Count XIII.

E. Detrex's motion for summary judgment is DENIED in all other respects.

SO ORDERED.