**Donald E. EARLY, Plaintiff,**

v.

**BANKERS LIFE & CASUALTY COMPANY and United States Equal Employment Opportunity Commission, Defendants.**

**No. 90 C 6711.**

United States District Court,
N.D. Illinois,
Eastern Division.

May 17, 1994.

See also 853 F.Supp. 268.

---

Alfred E. Aspengren, Aspengren & Associates, Chicago, IL, for Donald E. Early.

Harry M. Sangerman, Kearney Wood Kilens, McDermott, Will & Emery, Chicago, IL, for Bankers Life and Cas. Co.

Craig Arthur Oswald, U.S. Attys. Office, Chicago, IL, Maia R. Caplan, U.S. Equal Employment, Washington, DC.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court is the motion of defendant Bankers Life and Casualty Company ("Bankers") for summary judgment. For the following reasons, the motion is granted.

### FACTS [1]

Bankers is an Illinois corporation with its principal place of business in Illinois, engaged in the business of marketing and selling insurance. Plaintiff Donald E. Early ("Early") is a former employee of Bankers who occupied various positions with Bankers from November 19, 1969 until November 18, 1988 when he was involuntarily discharged. At the time of his termination, Early was fifty-six years of age.[2]

In 1969, Early was first hired as life insurance sales manager for Bankers. As a sales manager he provided support to Bankers' home office staffs, drafted underwriting rules, product development proposals, product announcement, brochures, and rate manuals, and conducted development research and analysis. In 1973, Early was promoted to manager of sales development. In 1975, Early was transferred to the Marketing Division, where he continued to provide marketing support with an emphasis on life insurance and annuities.

In 1977, Early was promoted to Director of Marketing Development. In 1983, Early was assigned to the position of Director of Life Annuity Product Development within the Marketing Division. As the director, his emphasis on life insurance, annuities, and advanced underwriting increased.

Also in 1983, Bankers hired Gary Greenfield ("Greenfield") as Vice–President of

---

1. The following facts are drawn from the statements of facts the parties submitted in compliance with Rules 12(m) and 12(n) of the Rules of the United States District Court for the Northern District of Illinois and the accompanying exhibits.

2. Early was born on December 17, 1931.

Field Development. His responsibility included the Marketing Division, field agents, and the managers. After joining Bankers, Greenfield focused on expanding the scope of the target market, the traditional senior citizen market, by improving sales to younger individuals. Early assisted Greenfield and his staff to achieve this expansion.

In 1984, ICH acquired Bankers and began restructuring its organization. The friction arose between the management and Early after this reorganization. As part of the restructuring, there was a substantial labor force reduction from 4,200 employees in 1984 down to 2,800 in recent years. The largest reduction occurred prior to 1987. Fortyseven employees including Early were released in the 1988 reduction.

From the mid–1980s to 1988, the relevant chain of command in the Marketing Division at Bankers was as follows: employees Alice Bauer ("Bauer"), Tim Baumann ("Baumann"), and Tom Dennany ("Dennany") reported to James Gaylord ("Gaylord"); Gaylord and Early reported to Greenfield; and Greenfield reported to Jim Bentle, the Senior Vice President of Field Development. In the Actuarial Division, Bernard Rabinowitz ("Rabinowitz") reported to Paul Janus ("Janus"), the Senior Vice President and Chief Actuary.

Another change made by ICH was consolidating the product development and marketing support division with the Actuarial Division. The decision to consolidate was not made, suggested, or encouraged by Bankers' management. ICH's then president Jack Gardner ("Gardner") implemented and executed the move. Prior to the acquisition, the product development and marketing support division was under the Marketing Division. After the consolidation, the Marketing Division's function was limited to providing agent and management training related to product releases. With the changes, Early was transferred to the Actuarial Division.

After the transfer, Early no longer reported to Greenfield, but instead reported directly to Janus. After several months, however, Rabinowitz became Early's direct supervisor at the direction of Janus. Both Janus and Rabinowitz had difficulties in working with Early.

The consolidation not only affected the chain of command, but also altered the scope of Early's responsibilities. ICH took an active role in developing new products and preparing the necessary sales materials. Early was thus no longer needed by Bankers to develop products and prepare sales materials. His duties changed from developing new products to adapting and implementing the product sales materials prepared by ICH for Bankers' field representatives. To assist Early in performing his duties at the Actuarial Division, Bankers assigned Bauer to Early's staff. Bauer is four years older than Early. Bauer responded to Early's requests to prepare drafts of marketing materials, handled correspondence, and provided relief when the proposal system became overloaded. During this time, Bankers was preparing Bauer to be a life-annuity product specialist.

In 1986, the departure of Gardner provided Janus and Bentle the opportunity to return the life and annuity marketing support function from the Actuarial Division to the Marketing Division. In late 1986, the marketing functions within the Actuarial Division returned to the Marketing Division. Bauer, along with other members of Early's staff, was also transferred back to the Marketing Division and continued to perform the same duties. Bauer, however, began reporting to Gaylord. Early was not transferred back to the Marketing Division.

Though Early was not transferred along with the product implementation and marketing support division, Early's job was transferred and reassigned to Gaylord in the Marketing Division. Gaylord is three years older than Early. Essentially, Gaylord's job description was expanded to encompass Early's prior duties. With the new job description came the new title for Gaylord: Director of Agent Development/Product Implementation. Prior to the new job description, Gaylord was only responsible for agent development.

Consequently, after the product implementation function of the Actuarial Division and Early's staff were returned to the Marketing Division, Early did not have any remaining duties at the Actuarial Division. So, in No-

vember 1986, Bentle instructed Greenfield to create a position for Early in the Marketing Division, but no staff or salary increases were allowed for the new position. Bentle made the request so that Early may continue his employment with Bankers until he could qualify for additional severance benefits under Bankers' Rule of Seventy-five.[3]

In April 1987, Janus informed Early that there were no tasks or functions remaining in the Actuarial Division for Early to perform. Janus advised Early, however, that Greenfield intended to offer him a position in the Marketing Division. Subsequently, Early spoke with Greenfield about the position in the Marketing Division. Greenfield explained that the position was a position with a fixed level of compensation with no eligibility for salary increases including merit increases. Further, Greenfield informed Early that he will not have a staff and that his duties will be defined by Greenfield himself. Early accepted the terms of the position.

In August 1987, Bankers created and filled a new position of Director of Financial & Business Sales & Services Division. The person who filled that position was not Early, but a younger, outside-hire, James A. White ("White"). White was thirty-eight years of age at the time of his hire. On November 18, 1988, Early became one of the forty-seven individuals terminated by Bankers in 1988. After the termination, Early's former position was eliminated from Bankers' organizational chart.

This suit followed on November 16, 1990. Early alleges that Bankers engaged in unlawful employment practices in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* In the amended complaint, Early accuses Bankers of singling him out and systematically stripping away his titles, duties, and responsibilities and reassigning them to younger employees, resulting in his termination. Bankers contends that Early's position was phased out as part of its restructuring and

labor management. Bankers further asserts that Early's termination was in fact postponed for two additional years so that he may qualify for the benefits of the Rule of Seventy-five.

### DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Capital Options Invs., Inc. v. Goldberg Bros. Commodities, Inc.*, 958 F.2d 186, 188 (7th Cir.1992). Even though all reasonable inferences are drawn in favor of the party opposing the motion, *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992), presenting only a scintilla of evidence will not suffice to oppose a motion for summary judgment. *Brownell v. Figel*, 950 F.2d 1285, 1289 (7th Cir.1991). Nor will some metaphysical doubt as to the material facts suffice. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

Moreover, the disputed facts *must* be those that might affect the outcome of the suit to properly preclude summary judgment, *First Ind. Bank v. Baker*, 957 F.2d 506, 508 (7th Cir.1992), and a dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Accordingly, the nonmoving party is

---

**3.** The Rule of Seventy-five is a policy of Bankers which provides that an employee can become eligible for early retirement if the sum of the employee's age and his or her years of service to Bankers equals seventy-five. Additionally, terminated employees who meet the Rule of Seventy-

five would be eligible for additional severance benefits. Early became eligible for the rule on November 18, 1988. On that date, his years of service equaled nineteen and he attained the age of fifty-six.

required to go beyond the pleadings, affidavits, depositions, answers to interrogatories and admissions on file to designate specific facts showing a genuine issue for trial. *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991).

Before addressing the merits of Bankers' motion for summary judgment, a discussion of Local Rules 12(m) and 12(n) of the Rules of the United States District Court for the Northern District of Illinois ("Local Rule") is warranted. Local Rules 12(m) and 12(n) are instrumental in ensuring that the opposing party to a summary judgment motion does not simply rest on his or her pleadings to avoid summary judgment, especially when the opposing party also bears the burden of proof. *McDonald v. Commonwealth Edison Servs. Annuity,* 810 F.Supp. 239, 241 (N.D.Ill.1993). Local Rule 12(m) provides that, with each motion for summary judgment pursuant to Fed.R.Civ.P. 56, the moving party must also file and serve, *inter alia,* "a statement of material facts as to which the moving party contends there is no genuine issue . . . ." Local Rule 12(m).[4]

■ The counterpart to Local Rule 12(m), Local Rule 12(n), provides in relevant part that:

> Each party opposing a Rule 56 motion shall serve and file . . . a concise response to the movant's [Local Rule 12(m)] statement. That response shall contain (1) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon. . . .

Local Rule 12(n). Any facts asserted by the movant in the 12(m) statement are deemed admitted unless the opposing party contradicts them in the manner specified under Local Rule 12(n). *Valenti v. Qualex, Inc.,* 970 F.2d 363, 369 (7th Cir.1992); *see also Lionel Trains, Inc. v. Albano,* 831 F.Supp. 647, 649 (N.D.Ill.1993) (failure to comply with Rule 12(n) results in material facts being admitted). A mere denial of the movant's

asserted facts is insufficient to comply with Local Rule 12(n) if made without reference to supporting material, or made with incorrect reference. *Bell, Boyd, & Lloyd v. Tapy,* 896 F.2d 1101, 1103 (7th Cir.1990). The strict application of Local Rule 12(n) has been repeatedly upheld by the Seventh Circuit. *Schulz v. Serfilco, Ltd.,* 965 F.2d 516, 519 (7th Cir.1992) (collecting cases).

■ The defect in Early's response to Bankers' 12(m) statement is that he fails to submit a 12(n) statement responding to each numbered paragraph of Bankers' 12(m) statement. Instead, Early attaches a commentary on Bankers' fact portion of its memorandum of law as an exhibit to his response to Bankers' motion, without proper reference to any supporting materials contradicting Bankers' 12(m) statements. Merely citing to materials that may support Early's commentary on a matter not directed to the 12(m) statements is an inadequate 12(n) response. To comply with Local Rule 12(n), any denials to the 12(m) statements must be supported by specific facts, rather than characterizations and arguments of counsel. While Early does set forth additional facts, which are mostly repetitive of the facts stated in Bankers' 12(m) statement, his 12(n) statement is not a concise response to Bankers' 12(m) statement. Therefore, the court will deem Bankers' factual statements as admitted.

■ The court now turns its attention to the merits of the motion. Congress enacted the ADEA in 1967 primarily to promote employment practices that are based on an individual's ability to perform, rather than on his or her age. 29 U.S.C. § 621(b). The ADEA was thus designed to prohibit employers from arbitrarily discriminating against individuals based on their age. *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 120, 105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985). The ADEA makes it unlawful for employers to engaged in the following conduct:

> (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his

---

4. Because the present motion for summary judgment was filed before April 4, 1994, the effective date of the amended Rules 12(M) and 12(N), the court will apply and cite to the unamended versions of Rules 12(m) and 12(n).

compensation, terms, conditions, or privileges of employment, because of such individual's age; (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or (3) to reduce the wage rate of any employee in order to comply with this chapter.

29 U.S.C. § 623(a). The prohibitions under ADEA are limited to those who have attained the age of forty or older. 29 U.S.C. § 631(a). Any person who is at least forty years of age and is discriminated based on age, the individual may commence a civil action for legal or equitable relief. 29 U.S.C. § 626(c)(1).

■ To establish liability under the ADEA, a plaintiff must prove that a determining factor in the employer's decision to terminate was due to the plaintiff's age. *Smith v. Great Am. Restaurants, Inc.*, 969 F.2d 430, 434 (7th Cir.1992); *Anderson v. Stauffer Chem. Co.*, 965 F.2d 397, 400 (7th Cir.1992). The plaintiff is, however, not required to prove that his or her age was the sole motivating factor in the employer's decision to discharge. *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1038 (7th Cir.1993). Rather, an ADEA plaintiff is only required to prove that he or she would not have been terminated "but for" his or her age. *Fisher v. Transco Serv.–Milwaukee, Inc.*, 979 F.2d 1239, 1243 (7th Cir.1992).

■ There are two methods of proof available to a plaintiff to demonstrate unlawful age discrimination. The first method of proof, the direct method, is to adduce direct or circumstantial evidence tending to evince that his or her age was a "but for" factor in the discharge decision. *Konowitz v. Schnadig Corp.*, 965 F.2d 230, 232 (7th Cir.1992). The second method of proof, commonly known as the burden-shifting method as outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), is to establish a *prima facie* case, creating a rebuttable presumption of discrimination. *Weiss v. Coca–Cola Bottling Co.*, 990 F.2d 333, 336 (7th Cir.1993). While the burden-shifting method was originally framed by the *McDonnell* Court to address actions arising under the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, the method has been adopted by the Seventh Circuit to govern ADEA claims. *Oxman v. WLS–TV*, 846 F.2d 448, 452 (7th Cir.1988); *Ayala v. Mayfair Molded Prods. Corp.*, 831 F.2d 1314, 1318 (7th Cir.1987); *Tice v. Lampert Yards, Inc.*, 761 F.2d 1210, 1212 (7th Cir.1985).

■ There are three phases to the burden-shifting method. The initial burden of satisfying the first phase is on the plaintiff. The plaintiff must establish a *prima facie* case of discriminatory discharge by demonstrating that "(1) he was a member of the protected class (persons over forty), (2) he was performing his job well enough to meet his employer's legitimate expectations, (3) he was discharged, and (4) the employer sought a replacement for him." *Sarsha*, 3 F.3d at 1039. To establish a *prima facie* case in a reduction in force situation, the fourth element may be satisfied by establishing that younger employees were treated more favorably than the plaintiff based on age. *Smith v. Gen. Scanning, Inc.*, 876 F.2d 1315, 1318 (7th Cir.1989); *Oxman*, 846 F.2d at 453.

■ Once a *prima facie* case is established, a rebuttable presumption is created that the employer's decision to terminate was the result of impermissible factors. *Chesser v. Ill.*, 895 F.2d 330, 333 n. 3 (7th Cir.1990). This rebuttable presumption shifts the burden of production to the employer to "articulate a legitimate reason for the discharge." *Weiss*, 990 F.2d at 336. This is the second phase of the shifting method. The employer "need not persuade the court that it was actually motivated by its proffered reasons." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). The employer is only required to explain the lawful justification for the termination of employment. *Id.* If the employer fails to offer a legitimate reason for its decision to terminate, judgment must be entered against the employer. *Id.*

■ If, however, the employer satisfies the second phase, the rebuttable presumption is dissolved and the burden of produc-

tion shifts back to the plaintiff for the third phase. *Weihaupt v. American Medical Ass'n,* 874 F.2d 419, 424 (7th Cir.1989). The third phase requires the plaintiff to show that the employer's proffered explanation for the termination amounts to nothing more than a mere pretext for discrimination. *Fisher,* 979 F.2d at 1243. To meet this burden of production, the plaintiff is not required to produce direct evidence to contradict the proffered reason. The plaintiff may either persuade the court that the discriminatory reason more likely motivated the employer or that the purported explanation is unworthy of credence. *Burdine,* 450 U.S. at 257, 101 S.Ct. at 1095–96. Thus, under the burden-shifting approach,

> if a plaintiff convinces the trier of fact that it is more likely than not that the employer did not act for its proffered reasons the employer's decision remains unexplained and the inferences from the evidence produced by the plaintiff may be sufficient to prove the ultimate fact of discriminatory intent.

*Oxman v. WLS–TV,* 12 F.3d 652, 657 (7th Cir.1993) (quoting *Ayala,* 831 F.2d at 1319).

■ In the instant motion, Bankers argues that there is no direct or circumstantial evidence of discrimination, and furthermore, even under the burden-shifting method, Early cannot prove a *prima facie* case. Bankers does not contest that Early was at least forty years of age at the time of termination, thus a member of the protected class, or that Bankers terminated him. Bankers, however, contends that Early performed less than satisfactory while at the Actuarial Division and that he was not replaced by a younger employee or treated unfavorably based on his age. To the contrary, the evidence demonstrates that Bankers treated Early more favorably based on his age and the length of his service.

The uncontested facts demonstrate that Early was not meeting the expectations of Bankers. Bankers' management was dissatisfied with Early's ability to perform his duties in an efficient manner and to communicate effectively. The dissatisfaction began to surface in 1986 when Janus had difficulty with Early during their report meetings.

According to Janus, Early was not focused on the relevant issues and tended to ramble during the meetings. Additionally, Early's projects were not being timely completed. The difficulty in communication and delay in project completion, however, did not result in Early's termination in 1986. Rather, Janus directed Early to report to Rabinowitz instead of him to alleviate the problem. Janus believed that because both Rabinowitz and Early worked on similar issues in the area of life insurance they would have a better reporting relationship. The reporting relationship change occurred in 1986.

The dissatisfaction with Early's performance, however, did not cease with Janus. Rabinowitz was also dissatisfied with Early's job performance. While Early was in the Actuarial Division, he held a chairperson position of Bankers' Life/Annuity Product Committee, a committee that focused on product development. Rabinowitz observed that the committee was never able to reach a consensus due to Early's protracted debates and reopening of matters that were close to their conclusion. Such behavior caused delay in product development and committee decisions. As a result, Early was removed from the committee chairperson position and he was replaced by Janus. In March 1987, Janus reviewed Early's performance as unsatisfactory. Furthermore, Bentle was also concerned with Early's ability to support the field representatives.

■ The affidavits submitted in support of Early's response contain certain statements praising the assistance the affiants received from Early while employed at Bankers. These statements are not relevant to whether Early performed his duties satisfactorily to meet Bankers' expectations in this case because the relevant expectation is the expectation of the employer. *See Darnell v. Target Stores,* 16 F.3d 174, 177 (7th Cir. 1994); *Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120, 1125 (7th Cir.1994). Early contends that the reviews made by Janus and Rabinowitz are unfair assessments. Merely attacking the fairness of the performance reviews, however, is insufficient to prove age discrimination, "unless age played a role in the evaluation." *Robinson v. PPG Indus.,*

*Inc.,* 23 F.3d 1159, 1163–64 (7th Cir.1994). But, Early fails to introduce any facts tending to show that his age was a factor in the evaluations.

Furthermore, Early emphasizes the statement Greenfield made at the time Greenfield communicated Bankers' intention of terminating him as evidence that Early was performing satisfactorily. At the time Greenfield terminated Early, he informed Early that Bankers can no longer justify keeping Early on the payroll but that his performance had no impact on the decision. Greenfield, however, explained during his deposition that he made that statement because he was terminating Early. Although favorable inferences must be drawn in favor of Early, Greenfield's statement cannot be viewed in a vacuum, but viewed in its proper context. When viewed in its proper context, the statement may only create a metaphysical doubt as to whether Early performed his duties to satisfy Bankers' expectations, and thus insufficient to establish the second element. It is significant to note that the challenged employment decisions occurred during a two-year span.

Early not only fails to satisfy the second element, but also fails to adduce any evidence to prove the fourth element of a *prima facie* case. Bankers contends that Early fails to meet the fourth requirement because he presents no evidence to demonstrate that either younger employees replaced Early or that younger employees were treated more favorably. In support of its contention, Bankers asserts that Early's functions were assigned to Bauer and Gaylord who are both older than Early.

▪ While Early need not prove that persons who are not members of the protected class replaced him or that they received favorable treatment, *Kralman v. Ill. Dept. of Veterans' Affairs,* 23 F.3d 150, 154–55 (7th Cir.1994), he must at minimum prove that younger employees, who may or may not be over forty years of age, replaced Early or that they received favorable treatment. Nonetheless, Early fails to establish that he was replaced by a younger employee. To the contrary, the uncontested facts evince that older employees took over his duties and functions. In addition, there is no evidence that younger employees received more favorable treatment.

Even if Early proves a *prima facie* case, Early cannot show that Bankers' explanation for Early's discharge was a pretext for age discrimination. Bankers satisfied its burden of presenting a legitimate reason for its employment decisions. The reason for the change in Early's function from product development to product implementation was due to the acquisition of Bankers by ICH. ICH researched and developed new products and prepared the necessary marketing materials to be employed by Bankers' sales staff. Therefore, Early's position was reduced to implementing the ICH products for the staff of Bankers. When the management returned the product implementation division from the Actuarial Division to the Marketing Division, it decided to reassign Early's duties to Gaylord in the Marketing Division. When the reassignment was completed, nothing remained for Early. The decision to reassign Early's responsibilities was based on the unsatisfactory performance of Early in executing product implementation projects.

Although no duties or functions remained for Early, the management allowed Early to stay employed with Bankers so that he may qualify for the Rule of Seventy-five and receive additional severance benefits. When Early met the criteria for the Rule of Seventy-five, Bankers released him from the company. Bankers could not justify retaining Early for a longer period than necessary. In fact, Bankers has been reorganizing and reducing its labor force since the ICH acquisition. Thus, the presumption of discrimination, assuming a *prima facie* case has been established, is dissolved and the burden of production shifts to Early to prove that the reasons propounded by Bankers are mere pretexts for unlawful discrimination.

▪ The issue of pretext does not focus on the correctness or desirability of the reasons offered by the employer. *Kralman,* 23 F.3d at 156–57. Instead, the issue of pretext focuses on the question of whether the employer honestly believes in the reasons it asserts. *McCoy v. WGN Continental Broad-*

*casting Co.,* 957 F.2d 368, 373 (7th Cir.1992). The Seventh Circuit has frequently stated: we do "not sit as a super-personnel department that reexamines an entity's business decisions." *Dale [v. Chicago Tribune Co.,* 797 F.2d 458, 464 (7th Cir.1986)]. "No matter how medieval a firm's practices, no matter how highhanded its decisional process, no matter how mistaken the firm's managers, [the ADEA does] not interfere." *Pollard v. Rea Magnet Wire Co.,* 824 F.2d 557, 560 (7th Cir.1987). Rather, our inquiry is limited to "whether the employer gave an honest explanation of its behavior." *Id.*

*Smith,* 876 F.2d at 1321 (quoting *Mechnig v. Sears, Roebuck & Co.,* 864 F.2d 1359, 1365 (7th Cir.1988)) (brackets in the original). To establish that the employer's reasons for the termination is a pretext for discrimination, "[i]t is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible.... [but] he must show that the explanation is 'a phony reason'." *Pignato v. Am. Trans Air, Inc.,* 14 F.3d 342, 349 (7th Cir.1994).

In this case, there is no evidence tending to show or infer that Bankers' explanation for the various challenged decisions are "phony reasons." Early argues that Bankers created an elaborate scheme in which he would train a lesser-paid employee, Bauer, so that she may replace him, and in which Bankers would systematically eliminate and reassign his duties to others and subsequently discharge him under the guise of reduction in labor force. Further, Early argues that at least 50% of his duties were assigned to White by way of creating a new position, and his other duties were performed by Baumann, another younger employee.

Early's attempt to demonstrate pretext for discrimination lacks support in law and in fact. First, the Seventh Circuit is typically skeptical of elaborate scheme theories of pretext for discrimination. *Konowitz,* 965 F.2d at 234 (citing *McCoy,* 957 F.2d at 372; *Palucki v. Sears, Roebuck & Co.,* 879 F.2d 1568, 1571 (7th Cir.1989)). This case is no exception. Early makes allegations of an elaborate scheme to discriminate against him based on age, but he offers no facts to create an issue of fact as to whether Bankers plotted for almost two years, making substantial assignment and divisional changes, substantially reducing its labor force, and creating a new position in the organization to preserve Early's pay level so that Bankers could discharge Early without the appearance of unlawful employment discrimination.

Second, the fact that Bauer was a lower salaried employee is not relevant. Generally, the level of compensation is correlated with age, however, the correlation is not without variation. *Anderson,* 13 F.3d at 1126. "A younger worker who has spent his entire career with the same employer may earn a higher salary than an older worker who has recently been hired by the same employer." *Id.* This case is representative of that scenario. Bauer is older than Early, but with a lower grade level and less seniority with Bankers than Early.

Third, there is no evidence that Early's duties were systematically dissolved because of his age. Early's original function as director for product development and marketing support became unnecessary due to the ICH acquisition of Bankers and ICH's practice of developing new products and preparing marketing materials. Additionally, the facts indicate, as discussed earlier, that Early's duties after the acquisition, product implementation, were assigned to Gaylord, an older employee, due to the management's dissatisfaction with Early's performance. Early, however, produces no evidence which would permit a rational factfinder to infer or conclude that reassignment of Early's duties were more likely caused by his age. The evidence indicates otherwise.

Fourth, Early's conclusory allegations that Bankers created a new position for White so that a younger employee may be hired, and reassigned Early's earlier duties to Gaylord so that one of his staff, Baumann, may perform those duties without the appearance of impropriety, lack factual support. Early does attach White's affidavit to his response to the motion in an attempt to create an inference that White performed some of the same functions Early performed. Nonetheless, White's statements in his affidavit are no less conclusory than Early's argument.

Affidavits submitted in opposition to a summary judgment motion must comply with Fed.R.Civ.P. 56(e). The statements of White that he performed the same functions Early performed prior to White's employment is not based on personal knowledge or based on admissible evidence. Moreover, the affidavit does not contain particular facts to establish the proposition Early proposes to the court.

Additionally, Baumann's affidavit succeeds no more than White's. Baumann was a staff member of Gaylord and received his assignments from Gaylord. While it may be that Baumann performed certain assignments and tasks that Early and his staff performed prior to 1986, such is not probative of age discrimination. When Gaylord's job description was expanded to include Early's responsibilities, it is not pointedly unreasonable for Gaylord to assign and delegate some of the responsibility to his staff members as Early delegated certain tasks to his staff members. There is no favorable inference from Baumann's affidavit to create a genuine issue of fact whether Bankers gave Baumann Early's responsibilities because of his age.

Fifth, Early fails to present any evidence casting a doubtful light on Bankers' proposed reason that Early's termination was part of its reorganization and downsizing of its work force. The reduction in force did not suddenly occur in 1988; rather, the policy began soon after ICH acquired Bankers. It is true that Bankers' statistical evidence is not absolute evidence against Early's accusations of age discrimination. The danger posed by the use of statistics is its inherent ability to mislead the targeted audience by using a statistically favorable pool in order to achieve a certain trend or percentage. The statistical data in this case does, however, show that there has been a continuing policy of reduction in force since 1986. Early was one of the belated casualties through an established policy of reduction and not an informal or selective policy of reduction. *See Sarsha,* 3 F.3d at 1040. Thus, no evidence of pretext is presented to counter the reduction in force explanation.

While there is no evidence that Early's age was a determining factor in Bankers' execution of adverse employment decisions, there is ample evidence that Early's age was considered in treating Early more favorably than other employees in the midst of a reduction in force. The management created a new position so that Early may remain on Bankers' payroll until he could qualify for more severance benefits under the Rule of Seventy-five. At the time of Bankers' decision to reassign product implementation functions to Gaylord, Early was approximately two years short of qualifying for the Rule of Seventy-five. Instead of terminating Early in 1986, Bankers retained him because of his age. The court finds that favorable treatment based on age and the length of service do not run afoul of the purpose of the ADEA. Under these circumstances, Early fails to establish both a *prima facie* case and that the proposed explanation for Bankers' employment decisions with respect to Early is a pretext for age discrimination. Thus, in opposition to Bankers' motion for summary judgment, Early has failed to present sufficient evidence to create a genuine issue of a material fact for trial. Accordingly, under the facts of this case, Bankers did not engage in unlawful age discrimination in terminating Early from its organization in 1988 as a matter of law.

### CONCLUSION

For the foregoing reasons, the motion of Bankers for summary judgment is granted.

IT IS SO ORDERED.