ESTATE OF Joseph CHLOPEK, deceased, by Debra FAHRFORTH, as Special Administrator and Individually, and David Chlopek, Plaintiffs,

v.

David JARMUSZ, and The City of Chicago, a Municipal Corporation, Defendants.

No. 93 C 3348.

United States District Court, N.D. Illinois, Eastern Division.

Feb. 28, 1995.

Joseph Michael O'Callaghan, O'Callaghan & Associates, P.C., Chicago, IL, for plaintiffs Debra Fahrforth, for herself and as Special Adm'r for Joseph Chlopek, and David Chlopek.

Debra Fahrforth, pro se.

David Chlopek, pro se.

Robert W. Barber, Sharon Baldwin, John F. McGuire, City of Chicago, Law Dept., Corp. Counsel, Chicago, IL, for defendant David Jarmusz, Chicago Police Officer.

Susan S. Sher, City of Chicago, Law Dept., Corp. Counsel, Chicago, IL, James Patrick McCarthy, Patrick J. Rocks, Jr., Justin Paul Erbacci, Margaret Ann Carey, Patricia Jo Kendall, Irene Schild Caminer, City of Chicago, Law Dept., Corp. Counsel, Chicago, IL, for defendant City of Chicago.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court is the Defendant's motion for summary judgment. For the following reasons, the motion is granted.

### FACTS [1]

On June 6, 1992, Defendant Officer David Jarmusz ("Jarmusz") shot and killed Joseph Chlopek ("Chlopek"). Plaintiffs brought this action alleging violations of 42 U.S.C. §§ 1983, 1985, 1988, and various state law claims. In November 1993, the court dismissed a number of the named defendants and all references to § 1985 claims. Two defendants remain in the case: Jarmusz and the City of Chicago.

A brief background of this contemporary tragedy is appropriate. As of the date of the shooting, Jarmusz had been an officer with the Chicago Police Department for approximately nineteen years. He was a member of the Special Operations Group of the Chicago Police Department from 1976 to 1981. In 1981, Jarmusz was promoted to the rank of Gang Specialist. On June 6, 1992, he was serving with the Gang Crimes South Unit. He was trained as a marksman and is tested yearly.

At 3:00 p.m. on June 6, 1992, Jarmusz and Officer John Hennis ("Hennis") were looking for Adolph Garza, Jr. ("Garza"). The state court had issued a warrant commanding the arrest of Garza. Hennis and Jarmusz drove, in an unmarked squad car, to the Davis Elementary school located at 3014 West 39th Place in an effort to execute the warrant. Upon their arrival, the officers saw a group of youths in the schoolyard who, from their clothing of black shirts and brown or tan pants, appeared to be members of the 2–6 Gang. The officers did not see Garza among the group on their first drive past the schoolyard. Jarmusz and Hennis drove past the schoolyard a total of four times.

Although Jarmusz and Hennis did not see Garza, they did take special note of a person later identified as Chlopek. At that time, Chlopek was twelve years old, at a height of five feet, five inches, and a weight of approximately one hundred nine pounds. Moreover, he wore a black shirt and maroon trousers that day.

Each time the officers drove past the school, they noticed that Chlopek would turn, grab his midriff with his right hand,[2] and walk away from the group. After the second pass, the officers stopped and interviewed a girl they knew to be Garza's sister. After the third pass, the officers drove into an alley to surreptitiously observe the group. From that position, they watched Chlopek return to the group as the group members began looking around. The officers then passed a fourth time and observed Chlopek walk away from the group yet again.

After the fourth passing, the officers decided to investigate more thoroughly. They drove to the east side of the school which was out of the group's direct line of sight. Jarmusz got out of the car and positioned himself to view the group in the schoolyard. Jarmusz was not wearing his jacket at this time, leaving his gun and handcuffs exposed. After dropping off Jarmusz, Hennis continued to drive past on the south side of the schoolyard. From Jarmusz's vantage point he could not see the entire group, but he could see that members of the group were

---

1. The following facts are taken from the parties' submissions filed pursuant to Rules 12(M) and 12(N) of the Rules of the United States District Court for the Northern District of Illinois ("Local Rules").

2. "He would grab his left side or, you know, the left side towards the middle of his body. He grabbed like his abdomen area." (Jarmusz Dep. at 77.)

facing south and pointing in the direction where Hennis logically would have been.

As Hennis was driving past and Jarmusz began walking towards the group, Chlopek ran north and west from the group to an opening in the schoolyard fence. The group remained in the schoolyard. Jarmusz testified that Chlopek was approximately seventy-five yards away from him as he exited the school grounds. Jarmusz testified that Chlopek pulled a gun from his midriff area with his right hand as he crossed 39th Street. Jarmusz chased Chlopek north into an alley leading from 39th Street to 38th Place. Jarmusz's gun was drawn. During the chase, Jarmusz yelled "Police," "Halt," and "Stop." Chlopek did not comply with the orders nor did he verbally respond, but instead looked back at Jarmusz two or three times. After Chlopek looked back a second time, Jarmusz fired a round into the air as a warning. Chlopek, still running, then exited the alley onto 38th Place.

Meanwhile, once he saw Chlopek leave the schoolyard, Hennis drove north past the school, then east on 38th Street in an effort to intercept Chlopek. However, after Chlopek exited the first alley, he crossed 38th Place and continued north into a second alley. Hennis followed behind Chlopek. After Jarmusz exited the first alley, he watched Hennis follow Chlopek and noticed Chlopek run east into an alley which branched off in the middle of the second alley. Jarmusz decided to run east along 38th Place. While running, Jarmusz looked north between the houses in attempt to see where Chlopek was running.

Moments later, Jarmusz saw Chlopek standing in a backyard, facing east, looking over a four foot fence into the alley. Jarmusz heard the unmarked squad car in the alley; Chlopek was looking where Hennis logically would have been. Jarmusz shouted warnings at Chlopek again and moved towards him. Jarmusz stopped approximately seventy-five feet from Chlopek. Jarmusz testified that Chlopek raised a gun and pointed it at him. Jarmusz believed that he would be shot. Jarmusz testified that he yelled at Chlopek to drop the gun, but that Chlopek did not. Jarmusz fired four rounds. He did not see Chlopek react to the bullets, so Jarmusz thought the bullets had missed him. In fact, Chlopek was hit with three bullets, one in his right ankle, one through his right arm which re-entered his chest, and one through his lateral right buttock. After the rounds were fired, Chlopek climbed the fence. Jarmusz watched as Chlopek began to cross the backyard, then yelled at him to stop and lie down. Chlopek looked at Jarmusz, then collapsed backwards and died.

## DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Salima v. Scherwood South, Inc.,* 38 F.3d 929, 931 (7th Cir.1994); *Transportation Communications Int'l Union v. CSX Transp., Inc.,* 30 F.3d 903, 904 (7th Cir.1994). Summary judgment is not a discretionary remedy and must be granted when the movant is entitled to it as a matter of law. *Jones v. Johnson,* 26 F.3d 727, 728 (7th Cir.1994). Even though all reasonable inferences are drawn in favor of the party opposing the motion, *Associated Milk Producers, Inc. v. Meadow Gold Dairies,* 27 F.3d 268, 270 (7th Cir.1994), presenting only a scintilla of evidence will not suffice to oppose a motion for summary judgment, *Walker v. Shansky,* 28 F.3d 666, 671 (7th Cir.1994). Nor will some metaphysical doubt as to the material facts suffice. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

Moreover, the disputed facts must be those that might affect the outcome of the suit to properly preclude summary judgment. *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir.1994). A dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Therefore, the

non-moving party is required to go beyond the pleadings with affidavits, depositions, answers to interrogatories and admissions on file to designate specific facts showing a genuine issue for trial. *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991). In the case at bar, the court finds that there are no genuine issues as to any material facts; hence, a summary judgment properly may be issued.

The central dispute between the parties is whether Chlopek possessed a gun that day. For if he did have a gun, the court could find that Jarmusz's act of shooting was a justified response of self-defense; thus, he would be immune from liability. If Chlopek did not have a gun, the court could find that the shooting was unjustified. Plaintiffs' contention is that Chlopek did not have a gun at all, and that some other person (implicitly officer Jarmusz) placed the gun in question at the scene.[3] Plaintiffs support their theory with a number of arguments. First, they argue the contention that Chlopek held the weapon with his right hand is wholly inconsistent with the actual fact that Chlopek was left handed. Second, they argue that the gun in question is not the same gun Jarmusz described as "shiny" in the Police Report. From this Plaintiffs conclude that his entire story is fabricated. Third, Plaintiffs argue that the Chicago Police had the last-known possession of the gun, which they imply supports their theory that Chlopek never had the gun and that another person dropped the gun at the scene. Fourth, the Medical Examiner's report describes that one bullet entered the side of Chlopek's arm, and not the front of his arm. Plaintiffs argue that he could not have been pointing a gun at Jarmusz at the time of the shooting. Fifth, the investigators were not able to lift Chlopek's fingerprints from the gun. Plaintiffs argue that this is inconsistent with Jarmusz's testimony that Chlopek held the gun in his bare right hand. Sixth, Plaintiffs argue in the alternative that even if Chlopek had carried a gun, his actions were consistent with self-defense. They speculate that Chlopek might not have recognized Jarmusz as a real police officer because Jarmusz was plain clothed,

rode in an unmarked squad car, and did not present a badge during the chase. Seventh, procedurally, Plaintiffs contend that Jarmusz's statements concerning the events may not be used to support state law claims due to Illinois' Dead–Man's Act, 735 ILCS 5/8–201.

 The court recognizes that in this summary judgment motion Plaintiffs' arguments may not be considered unless they were properly supported with evidentiary material. The court will accept only those factual statements that are well pled and are in compliance with Local Rules 12(M)(3), 12(N)(3)(a), and 12(N)(3)(b). Any statements not in compliance are not considered. *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 922 (7th Cir.1994) ("district courts are not obliged ... to scour the record looking for factual disputes"). Facts which the litigants properly assert in the 12(M)(3) and 12(N)(3)(b) statements are deemed admitted, unless the responding party contradicts them in the manner specified under the Local Rules. *Knox v. McGinnis,* 998 F.2d 1405, 1408 n. 8 (7th Cir.1993); *see also Early v. Bankers Life & Casualty Co.,* 853 F.Supp. 1074, 1079 (N.D.Ill.1994) (holding that failure to comply with Local Rule 12(N) results in the admission of material facts). Moreover, a mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material. *Edward E. Gillen Co. v. City of Lake Forest,* 3 F.3d 192, 196 (7th Cir.1993). The Seventh Circuit has repeatedly upheld the strict application of Local Rule 12(N). *Waldridge,* 24 F.3d at 922 (citing cases in accord).

The court finds that the following contentions are sufficiently supported in Plaintiffs' 12(N) Statement: that Chlopek was left hand dominant (*see* Def.'s Resp. to Pl.'s 12(N) Statement, at 22); and that the Chicago Police Department Crime Lab ("Crime Lab") lifted some ridges from the frame of the gun which have not been connected to Chlopek (*see* Def.'s Resp. to Pl.'s 12(N) Statement, at 24). In addition, although not properly articulated in Plaintiffs' 12(N) Statement, the court recognizes that Plaintiffs attached the Medical Examiner's Report of Postmortem

---

**3.** The depth of counsels' investigation regarding this issue is addressed *infra* p. 1193.

Examination ("Report") as an exhibit to their 12(N) Statement and that they relied on the Report as part of their argument. The Report demonstrates that one of the bullets entered Chlopek's right arm in the side, and not in the front, then exited and re-entered into his chest. (Pl.'s 12(N) Statement, Ex. 5.) All other contentions were not sufficiently supported.

Plaintiffs contend, however, that all of Jarmusz's testimony pertaining to the events which took place in the presence of Chlopek alone are not admissible for the court's determination. They argue that, as to the state law claims, the Illinois Dead Man's Act applies by way of Federal Rule of Evidence 601 ("Rule 601"). Rule 601 provides as follows:

Every person is competent to be a witness except as otherwise provided in these rules. However, in civil actions and proceedings, with respect to an element of a claim of defense as to which the State law supplies the rule of decision, the competency of a witness shall be determined in accordance with State law.

Fed.R.Evid. 601. The Illinois Dead Man's Act provides, in pertinent part:

In the trial of any action in which any party sues or defends as the representative of a deceased person ... no adverse party or person directly interested in the action shall be allowed to testify on his or her own behalf ... to any event which took place in the presence of the deceased....

735 ILCS 5/8–201. Plaintiffs conclude that together these provisions prevent the admission of Jarmusz's testimony. The court disagrees.

■ In *Donohoe v. Consolidated Operating & Production Corp.*, 736 F.Supp. 845, 860–61 (N.D.Ill.1990), Judge Shadur addressed whether Illinois Dead Man's Act supersedes Rule 601. In that case, the testimony in question related to an issue underlying both federal and state law claims. *Id.* at 860. Judge Shadur reasoned that Rule 601 defers to state law when state law alone supplies the rule of decision, but the rule does not address which evidentiary rule prevails when federal and state claims overlap. *Id.* at 861. The *Donohoe* court recognized

that Federal Rule of Evidence 501 parallels the language of Rule 601 and referred to the Judiciary Committee notes of Rule 501: " 'If the rule proposed here results in two conflicting bodies of privilege law applying to the same piece of evidence in the same case, it is contemplated that the rule favoring reception of the evidence should be applied.' " *Id.* (quoting the committee notes). Just as Judge Shadur concluded, this court finds the Judiciary Committee's position to be persuasive. *See also Phoenix Mutual Life Ins. v. Adams*, 828 F.Supp. 379, 388 (D.S.C.1993) (barring use of a state's Dead Man's Act where federal law supplied the rule of decision). Accordingly, this court applies Rule 601 to all claims and does not bar Jarmusz's testimony.

Initially, the underlying legal issue before the court was whether the three aforementioned submissions sufficiently raise a genuine issue of material fact as to any of the federal or state claims. However, there are facts in addition to those which the parties initially submitted.

In deciding Jarmusz's motion for summary judgment, the court noted that Jarmusz did not account for the gun's whereabouts prior to the two officers' arrival at the schoolyard. Plaintiffs even argue that the Chicago Police Department was the last-recorded possessor of the weapon and conclude from this that another placed the gun at the scene. *See supra* p. 1192. The entire record was absent facts revealing from what source Chlopek obtained the gun. Even though the parties' properly-supported initial statements warranted granting Jarmusz's motion for summary judgment, the submissions did not touch on how Chlopek came into possession of the weapon.

As a matter of course, the court thoroughly researched the case. While in the LEXIS database, under the "NEWS" library and the "MAJPAP" file, the following search term was used: "CHLOPEK." Seventy-one documents were retrieved, many of which reported on the whereabouts of the gun in question prior to the shooting. A number of articles reported that a fourteen-year-old boy had pleaded guilty to giving Joseph Chlopek a

gun on the day of the shooting. *See, e.g.,* Terry Wilson, *Teen Gets Probation; Gave Gun to Boy Shot by Cop,* Chi. Trib., Feb. 10, 1993, § 2, at 6. This information had escaped somehow the research efforts of counsel.

Due to the court's discovery, an order was issued on January 26, 1995. The court directed Jarmusz to file a supplement to his reply addressing solely the following question: who provided Chlopek with the gun he allegedly possessed at the Davis Elementary schoolyard and later pointed at Jarmusz? In compliance with the order, Jarmusz filed four documents: (a) a report of proceeding at a juvenile hearing before the Honorable Charles May on January 4, 1993; (b) a report of proceeding at a juvenile hearing before the Honorable Charles May on February 9, 1993; (c) an affidavit of Detective Terrence O'Connor to which was attached signed statements of Irma Nunez, Ricardo Velasquez, Richard Rocha, and John DeLeon taken late evening June 12, 1992, and early morning June 13, 1992; and (d) a certified copy of the court file regarding *In re John D. DeLeon,* Circuit Court of Cook County No. 92 J 11752.

The supplemental documents give rise to the issue of their admissibility. The transcripts submitted are offered for the truth of the matter asserted; therefore, all statements made at the hearings must be considered hearsay. For the court to consider the transcripts of the hearings, the statements must fall under one of the hearsay exceptions. At least two separate exceptions may be employed to admit the statements at issue. The first exception is entitled "Judgment of previous conviction." Fed.R.Evid. 803(22). The rule provides, in pertinent part, as follows:

---

**4.** DeLeon pleaded guilty to violating Ill.Rev.Stat. ch. 38, para. 24–1(a)(12) entitled "Unlawful Use of Weapons," currently cited at 720 ILCS 5/24–1. Effective July 1, 1994, subsection 12 was deleted. Yet, at the time DeLeon pleaded guilty, that section provided, in pertinent part, as follows:

A person commits the offense of unlawful use of weapons when he knowingly ...

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

Evidence of a final judgment, entered after a trial or upon a plea of guilty ... adjudging a person guilty of a crime punishable by death or imprisonment in excess of one year, to prove any fact essential to sustain the judgment....

*Id.* In other words, a court may use evidence of a final judgment to prove facts essential to sustaining a judgment. The Fifth Circuit Court of Appeals referred to this rule when it questioned whether the trial court could admit, in a civil case, the guilty plea of a third party. *Rozier v. Ford Motor Co.,* 573 F.2d 1332 (5th Cir.1978). In *Rozier,* the widow of a passenger killed in a rear-end car collision sued Ford Motor Company for negligently designing the rear-ended car. To demonstrate that the passenger's death was not attributable to any negligence on the part of Ford, the *Rozier* court allowed Ford to admit the guilty plea of the third party driver who rear-ended the car. The third party driver had previously pled guilty to voluntary manslaughter. The *Rozier* court held that the hearsay rule would not exclude the guilty plea by virtue of Rule 803(22). *Id.* at 1347.

In the case at bar, a final judgment was rendered after DeLeon pled guilty to unlawful possession of weapon on school grounds, which is a class four felony punishable by imprisonment in excess of one year.[4] As the evidence was used in *Rozier,* the judgment in question is used here to indicate that Chlopek was later in possession of a gun on June 6, 1992. Possession is an element of the class four felony. The court holds that DeLeon's admission to a class four felony may be admitted to establish that DeLeon possessed the loaded gun in question at the Davis Elementary School on June 6, 1992.

(12) Carries or possesses on about his person any ... pistol or revolver or other firearm ... while in the building or on the grounds of any elementary or secondary school, community college, college or university.
Ill.Ann.Stat. ch. 38, para. 24–1(a)(12) (Smith–Hurd Supp.1992). A person convicted of a violation of subsection 24–1(a)(12) committed a Class 4 Felony. *Id.* para. 24–1(b).

The second hearsay exception that applies is Rule 803(24). This rule allows for general exceptions that meet its criteria:

A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purpose of these rules and the interest of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

Fed.R.Evid. 803(24). In *Amcast Indus. Corp. v. Detrex Corp.,* 779 F.Supp. 1519 (N.D.Ind.1991), the court outlined elements that should be considered when admitting hearsay statements by way of Rule 803(24):

Among the factors considered in determining whether to apply the residual exception are the declarant's disinterest, the declarant's motivation to lie, the extent of the declarant's personal knowledge of the events recounted in the statement, the probable accuracy of the witness's recounting of the declarant's statement, a testifying witness's knowledge of the statement's contents, the declarant's age, the declarant's character for truthfulness and honesty, the frequency with which the declarant made similar statements, whether the declarant recanted the statement, the statement's temporal proximity to the event related, and the existence of sufficient corroborative evidence.

*Id.* at 1527–28 (citations omitted).

 The court finds that the facts of this case warrant application of Rule 803(24) to admit the hearsay statements made in the two hearings. DeLeon plead guilty to a class four felony. He admitted to giving a loaded weapon to a close friend on a playground approximately an hour before his friend was killed. Although the transcript of the hearings does not show that DeLeon was under oath, that fact does not bar the statements elicited. The statement made was one against the penal interest of the maker. DeLeon admitted to the felony with both his parents and his attorney present. In addition, the judge fully apprised the youth of his rights and made certain that the youth was aware of the seriousness of the situation. The lack of an oath does not significantly undermine the reliability and trustworthiness of the statements under these circumstances.

Furthermore, the statements made at the hearings satisfy the elements as set forth in *Amcast Indus. Corp.,* 779 F.Supp. at 1527. DeLeon had no motivation to lie. The facts which supported the conviction were about matters which DeLeon had personal knowledge. The probability of accurately recounting the events is high given the seriousness of the charge and the ultimate result of the events, i.e., the death of DeLeon's good friend. DeLeon was fifteen years old at the time of the hearings, old enough to appreciate the import of the hearings. In part, his responses to the court dealt with a simple question: what did he do with the gun he possessed in the schoolyard? Temporally, the hearings took place in January and February of 1993, six months after the shooting. Also, DeLeon never recanted any of the facts which supported the conviction. The court finds that these facts demonstrate an abundance of trustworthiness, the principle underlying the admissibility of hearsay. The out of court statements contain the appropriate indicia of reliability. Accordingly, the facts disclosed in the hearings are admissible for purposes of this motion for summary judgment.

These documents, in sum, represent that a fourteen-year-old friend of Chlopek, DeLeon, handed Chlopek the very gun which was later found next to Chlopek's body. After the shooting, the Chicago Police conducted an investigation which disclosed that Chlopek received the gun from an older gang member. DeLeon was arrested and put into cus-

tody for thirty days. A petition for admission, containing three counts, was filed against DeLeon for possession of the weapon. In the first hearing conducted January 4, 1993, DeLeon's counsel stated of his client, "He's admitting he did in fact hand the weapon to Mr. Chlopek at some time prior to the shooting." Following that, the court asked DeLeon, "Are you now admitting to having participated as it was recited into the record?" to which DeLeon responded, "Yes, sir." Of the events on June 6, 1992, the state's attorney recounted:

> Judge, if this case were to proceed to trial, the State would call Detective Kukulka. . . . Detective Kukulka, would testify he had a conversation with minor respondent, Mr. DeLeon, on June 13th, 1992. During that conversation, Mr. DeLeon related that on Saturday, June 6th, 1992, he was in the area of the Davis School Playground, when he saw Ricardo Rocha, who he knows as a fellow member of the 2–6 gang, and another individual member of the 2–6 gang, Ricardo Velasquez. Mr. DeLeon also stated an individual named Joey Chlopek, who DeLeon knows is a 2–6'er, and his gang name is Little Revolt, also showed up at the school. Mr. DeLeon stated earlier in the afternoon of June 6th, 1992, he and the other individuals were in the playground and that Mr. Rocha stated he had a gun which Rocha gave to DeLeon. DeLeon then put his gun in his pants and he noticed it was a .22 caliber and it was loaded. Joey Chlopek, at this point asked to see the gun and DeLeon initially refused. Joey Chlopek then said to DeLeon, he's a 2–6'er also, and DeLeon could trust him. DeLeon then gave him the gun and Joey then put the gun into his pants. DeLeon then said a short time later his father came to pick him up and when he left the playground, Joey had the gun.

After considering only the properly-supported relevant and admissible factual assertions, the court holds that there is no genuine issue of fact as to whether Chlopek carried a gun on June 6, 1992. Furthermore, there is no issue of material fact as to whether Jarmusz carried a gun other than his own weapon. The court is not merely accepting De-fendant's version of the facts or making credibility determinations, but rather holds that Plaintiffs' evidence is insufficient to raise a genuine issue. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) ("at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial"); *Agosto v. Immigration & Naturalization Serv.,* 436 U.S. 748, 756, 98 S.Ct. 2081, 2087, 56 L.Ed.2d 677 (1978) ("a district court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented"); *Castillo v. United States,* 34 F.3d 443, 445 (7th Cir.1994) (stating that judges ought not resolve summary judgment disputes by picking one affidavit over another contradicting one). First, the assertion that Chlopek was left handed *does not allow the conclusion that he could not have held the gun in his right hand.* Plaintiffs did not submit evidence suggesting that his right hand was somehow impaired. Second, the fact that the Crime Lab could not connect the lifted ridges to Chlopek does not necessitate the conclusion that Chlopek did not hold the gun. Plaintiffs did not submit any evidence to suggest that Chlopek's prints necessarily would be found on the weapon if he had held it. No evidence is offered connecting the lifted ridges to Jarmusz as well. Third, the fact that, according to the Report, the bullets entered Chlopek's body as they had done is not inconsistent with Jarmusz's testimony. Based on these submissions, either viewed in part or as a whole, one could not reasonably infer that the gun was placed at the scene of Chlopek's death by another person as Plaintiffs argue. The court holds that Chlopek failed to submit evidence which contradicts Jarmusz's position; therefore, there is no genuine issue of material fact. Hence, the final issue is, given that Chlopek was was pointing a loaded weapon at Jarmusz, whether Jarmusz violated any of Chlopek's rights when Jarmusz shot him.

■ The doctrine of qualified immunity is applicable in this case and governs the federal constitutional claims arising from 42 U.S.C. §§ 1983, 1988. Under the judicially

created doctrine of qualified immunity, public officials performing discretionary functions are shielded "from damages unless their conduct was unreasonable in light of clearly established law." *Elder v. Holloway,* —— U.S. ——, 114 S.Ct. 1019, 1021, 127 L.Ed.2d 344 (1994); *see also Harlow v. Fitzgerald,* 457 U.S. 800, 817–19, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Bakalis v. Golembeski,* 35 F.3d 318, 321 (7th Cir.1994); *Sledd v. Lindsay,* 864 F.Supp. 819, 827 (N.D.Ill.1994). Recently, this court wrote the following of the doctrine of qualified immunity:

> If a reasonable officer confronting a situation identical to the one alleged in the lawsuit could have found probable cause to believe that deadly force was necessary to protect the safety of himself and others from a threat of death or serious bodily harm, then qualified immunity must be afforded to the officer.

*Sledd,* 864 F.Supp. at 828 (quoting *Plakas v. Drinski,* 19 F.3d 1143, 1146 (7th Cir.1994); *Ellis v. Wyanalda,* 999 F.2d 243, 246 (7th Cir.1993)).

The case at bar involves a nineteen-year veteran of the police force who has specialized in gang activity. Jarmusz had no prior contact with Chlopek. Jarmusz came to the schoolyard in an effort to execute an arrest warrant for Garza. He chose to follow Chlopek only after both officers watched Chlopek's suspicious movements occur a number of times. As Jarmusz approached, Chlopek ran and pulled a gun from his waistband. Even after repeated warnings, including a warning shot fired into the air, Chlopek continued to flee. Once Jarmusz came upon Chlopek between the two houses as Chlopek peered into the alley at Hennis, Jarmusz again ordered the boy to drop the weapon. The uncontradicted evidence manifests that Chlopek pointed the gun at Jarmusz. Jarmusz responded by discharging four rounds. After Chlopek flipped over the fence, Jarmusz ordered him to stop, he turned to look at Jarmusz, then collapsed. The court finds that a reasonable officer in the same situation would have found probable cause to use deadly force to protect himself from the threat of death. In addition, Plaintiffs' alternative argument that Chlopek brandished the weapon in self-defense is not applicable. The doctrine of qualified immunity focuses on the objective reasonableness of the officer's actions, not the decedent's. *See generally Sledd,* 864 F.Supp. 819 (discussing the correct parameters of the qualified immunity doctrine). Accordingly, the doctrine of qualified immunity applies, and Jarmusz is not liable under any of the federal claims in Plaintiffs' second amended complaint.

The same analysis may be applied to the state law claims. Illinois' Local Governmental and Governmental Employees Tort Immunity Act provides as follows: "A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2–202. Willful and wanton misconduct is statutorily defined as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1–210. As a matter of law, Plaintiffs have not established that Jarmusz's conduct was willful and wanton. As such, Jarmusz may avail himself of Illinois' Local Governmental and Governmental Employees Tort Immunity Act. Accordingly, Jarmusz is immune from all liability arising from the state claims as well.

## CONCLUSION

For the foregoing reasons, Jarmusz's motion for summary judgment is granted as to all counts.

IT IS SO ORDERED.